FOURTH DIVISION
March 18, 2010

No. 1-07-2820

THE PEOPLE OF THE STATE OF ILLINOIS,    )    Appeal from the
                                        )    Circuit Court of
        Plaintiff-Appellee,             )    Cook County
                                        )
                v.                      )    No. 00 CR 3448
                                        )
DARRELL JARRETT,                        )    The Honorable
                                        )    John J. Fleming,
        Defendant-Appellant.            )    Judge Presiding.


PRESIDING JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Following a jury trial, defendant Darrell Jarrett was convicted of two counts of first degree murder and sentenced to natural life imprisonment, which was affirmed on direct appeal. *People v. Jarrett*, No. 1-03-2859 (2005) (unpublished order under Supreme Court Rule 23). Defendant filed a *pro se* postconviction petition under section 122–1(f) of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122–1(f) (West 2006)), and we also affirmed the circuit court's summary dismissal of defendant's petition. *People v. Jarrett*, No. 1-06-2766 (2008) (unpublished order under Supreme Court Rule 23). Defendant now appeals the summary dismissal of his successive *pro se* postconviction petition and the imposition of certain fees and costs. Defendant on appeal contends that his petition stated the gist of a constitutional claim of actual innocence, ineffective assistance of trial counsel, and a violation of *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963). Defendant further contends that the circuit court's imposition of certain fees violated his right to equal protection and was otherwise erroneous. We affirm as modified.

BACKGROUND

Defendant and codefendant Travoy Williams were charged with the December 1999 murders of Anthony Harris and William Key. The evidence adduced at their joint trial was as follows.

On December 29, 1999, Tarimako Allen was driving in her brown van and picked up Linda McGee, defendant, and Williams on the west side of Chicago. McGee sat in the front passenger seat, defendant sat behind McGee, and Williams sat behind Allen. As they approached the intersection of West Lexington Street and South Sacramento Boulevard, Williams told Allen to go west on Lexington. They drove down the block and approached a black Chevrolet Lumina on the south side of the street, in which the victims, Harris and Key, and an unidentified third individual were sitting.

Harris and Key were in the front seats of the Lumina and the third individual sat in the backseat. They spoke to Devon Joshua, who was standing outside of the car next to the driver's side window. Four feet behind the Lumina, Barbara Starling was sitting in her car, a white Plymouth.

Allen had driven just past the Lumina when defendant asked Williams, "Is that the guys [*sic*]?" Williams told defendant he believed so, and told Allen to stop and back up. Allen testified that Williams spoke briefly with the people in and around the Lumina, and then pushed her head down toward the steering wheel. Allen stated that she heard multiple gunshots very close to her, and McGee testified that it was Williams who drew a revolver and began firing multiple times at the Lumina. McGee ducked down in the backseat of the van. Starling also testified that the first set of gunshots came from the front driver's side of Allen's van.

When the shooting began, Harris and Key escaped the Lumina through the driver's side window, while Joshua ducked down next to the car. Starling testified that Harris and Key ran toward

2

a vacant lot through a gangway as defendant--whom she knew by the nickname "Meat Man"--got out of the van by a passenger side door, walked to the back of the van, and fired multiple times toward Harris and Key. Harris and Key both died of gunshot wounds.

Joshua testified that he was standing next to the Lumina talking to Harris and Key, who were both sitting inside. After he saw Williams fire several shots, Joshua took cover behind the sedan. Joshua then saw defendant, whom he knew as "Meat Man," get out of the van. Joshua ducked down lower, but he saw defendant's feet walk toward the curb. Joshua then heard several more gunshots.

Allen heard several shots from the backseat of the van, followed by several more from outside of the van. After the shooting, Allen saw defendant get back into the van, although she did not see defendant leave the van after the shooting started. Allen was then told to drive to defendant's brother-in-law's apartment near the intersection of North Hamlin Avenue and West Fulton Street.

Chicago police officer Michael Cronin testified that defendant's brother-in-law allowed him into the apartment and gave him permission to search it. Officer Cronin saw defendant leave a room and arrested him, and arrested Williams after finding him in a bedroom in the apartment. He then returned to the room where defendant emerged and found a plastic bag containing a .45-caliber Colt revolver, a .45-caliber Glock revolver, and a .25-caliber pistol. Subsequent forensic tests indicated that bullets recovered from the crime scene were consistent with the guns found in defendant's brother-in-law's apartment.

Defendant testified that when Allen's van stopped next to the Lumina, he got out of the van to see if a particular person was there, but as he walked to the back of the van, he heard gunshots. When he heard the shots, defendant believed someone was trying to shoot at him, so he pulled out

3

his gun and returned fire into a crowd of people he saw running around him.

On May 9, 2003, the jury found defendant guilty of two counts of first degree murder and one count of aggravated discharge of a firearm. On September 4, 2003, the trial court sentenced defendant to life in prison.

On direct appeal, defendant contended that he was denied the effective assistance of counsel because his attorney failed to file a motion to suppress evidence relating to the guns found when defendant and Williams were arrested. We rejected defendant's contention and affirmed his conviction and sentence. *People v. Jarrett*, No. 1-03-2859 (2005) (unpublished order under Supreme Court Rule 23), *appeal denied*, 216 Ill. 2d 710 (2005). On March 14, 2006, defendant filed a *pro se* postconviction petition claiming, *inter alia*, ineffective assistance of trial and appellate counsel based upon alleged improper jury instructions on accountability. The trial court summarily dismissed the petition, and we affirmed. *People v. Jarrett*, No. 1-06-2766 (August 22, 2008) (unpublished order under Supreme Court Rule 23), *appeal denied*, 233 Ill. 2d 579 (2009).

On June 11, 2007, defendant filed the instant successive *pro se* postconviction petition alleging: (1) actual innocence based upon newly discovered evidence, (2) ineffective assistance of trial and appellate counsel, and (3) a *Brady* violation. In his actual innocence claim, defendant included the affidavits of Ashake Banks and Charles Ginns. Banks's affidavit indicated that Ginns told her that, when the shooting began, Allen's brown van "pulled off," leaving defendant standing on the street. In addition, Banks's affidavit stated that Ginns then saw Michael Blue "draw and aim a gun" at defendant and defendant shoot at Blue in response, and that Ginns left the area after the shooting to avoid becoming involved in the investigation. Ginns's affidavit, however, only relates

that Blue "pulled out his gun to throw down on [defendant] and [defendant] pulled out his gun and shot at" Blue. Defendant asserted that this constituted newly discovered evidence because Ginns did not testify at defendant's trial. Defendant further claimed in an affidavit that his trial counsel specifically advised him not to testify that an individual pointed a gun at him.

Defendant also claimed that his trial counsel was ineffective, *inter alia*, for failing to investigate witnesses that could support his self-defense theory and for instructing him not to testify regarding an individual pointing a gun at him.

Defendant's claim of ineffective assistance of appellate counsel–which he does not pursue on appeal–alleged that appellate counsel failed to brief and argue ineffective assistance of trial counsel.

Finally, defendant alleged a *Brady* violation on the part of police based upon Officer Cronin's alleged refusal to give defendant the name of a "favorable witness" and the name of the person who aimed a gun at defendant because defendant would not provide information regarding drug activity in the Lawndale neighborhood of Chicago.

On September 5, 2007, in an eight-page written order, the trial court summarily dismissed defendant's successive petition, finding the petition entirely frivolous. In a separate order, the trial court imposed filing fees and court costs totaling $359, including a $294 fee for filing a postconviction petition and $50 in State's Attorney's fees.

Defendant now appeals the summary dismissal of his successive *pro se* postconviction petition and the imposition of certain fees and costs. Defendant contends that his petition stated the gist of a constitutional claim of actual innocence, ineffective assistance of trial counsel, and a *Brady*

violation. Defendant further contends that the circuit court's imposition of certain fees violated his right to equal protection and was otherwise erroneous. We will address each argument in turn.

ANALYSIS

I. Defendant's Failure to Seek Leave to File a Successive Petition

The State initially argues that the trial court properly dismissed the successive petition because defendant failed to first obtain leave to file his petition under section 122–1(f) of the Act. 725 ILCS 5/122–1(f) (West 2006). In the alternative, the State argues that, with respect to all three claims, the trial court properly dismissed defendant's successive petition because defendant forfeited the claims and failed to satisfy the cause-and-prejudice test. We now consider the State's initial argument that the trial court's dismissal was proper because defendant failed to obtain leave to file a successive petition.

In a noncapital case, the Act creates a three-stage procedure for postconviction relief. *People v. Boclair*, 202 Ill. 2d 89, 99 (2002). At stage one, the trial court determines whether the petition is frivolous or patently without merit. 725 ILCS 5/122–2.1 (West 2006). If the petition is not dismissed at stage one, it proceeds to stage two, where section 122–4 of the Act provides for the appointment of counsel for an indigent defendant. 725 ILCS 5/122–4 (West 2006). At stage two, the State has the opportunity to either answer or move to dismiss the petition (725 ILCS 5/122–5 (West 2006)), and the trial court determines whether the petition makes a substantial showing of a constitutional violation (*People v. Coleman*, 183 Ill. 2d 366, 381 (1998)). If the petition is not dismissed at stage two, it proceeds to stage three, for the trial court to conduct an evidentiary hearing. 725 ILCS 5/122–6 (West 2006). An evidentiary hearing on the petition is required when the

allegations of the petition, supported by the trial record and the accompanying affidavits, demonstrate a substantial violation of a constitutional right. *People v. Mitchell*, 189 Ill. 2d 312, 322 (2000).

An action for postconviction relief is a collateral proceeding rather than an appeal from the underlying judgment. *People v. Williams*, 186 Ill. 2d 55, 62 (1999). Principles of *res judicata* and waiver will limit the range of issues available to a postconviction petitioner " 'to constitutional matters which have not been, and could not have been, previously adjudicated.' " *People v. Scott*, 194 Ill. 2d 268, 273-74 (2000), quoting *People v. Winsett*, 153 Ill. 2d 335, 346 (1992). Accordingly, rulings on issues that were previously raised at trial or on direct appeal are *res judicata,* and issues that could have been raised in the earlier proceedings, but were not, will ordinarily be deemed waived. *Scott*, 194 Ill. 2d at 274; 725 ILCS 5/122–3 (West 2006).

The doctrines of *res judicata* and waiver will be relaxed, *inter alia*, where fundamental fairness so requires. *People v. Williams*, 209 Ill. 2d 227, 233 (2004). Moreover, section 122–1(f) of the Act provides that only one petition may be filed by a petitioner without leave of the court. 725 ILCS 5/122–1(f) (West 2006). Both fundamental fairness and the granting of leave to file a successive petition are defined in terms of the cause-and-prejudice test, which must be applied to each claim in a successive petition. *People v. Pitsonbarger*, 205 Ill. 2d 444, 458-59 (2002); 725 ILCS 5/122–1(f) (West 2006). Cause is defined as some objective factor external to the defense that impeded efforts to raise the claim in an earlier proceeding (725 ILCS 5/122–1(f) (West 2006); *Pitsonbarger*, 205 Ill. 2d at 460), and prejudice occurs where the alleged error "so infected" the trial that the resulting conviction or sentence violates due process (725 ILCS 5/122–1(f) (West 2006);

No. 1-07-2820

*Pitsonbarger*, 205 Ill. 2d at 464).

The State's initial response is that the trial court's dismissal was proper because defendant failed to seek leave to file a successive petition prior to submitting it to the trial court. The State further argues that, because "leave to file was never expressly granted, the successive post-conviction petition was never filed, and never made it to the first stage of proceedings." The State then concludes, quoting *People v. DeBerry*, 372 Ill. App. 3d 1056, 1060 (2007), that this court has " 'nothing further to discuss or review' " because defendant's failure to obtain leave to file a successive petition " 'trumps anything that defendant's petition may contain.' "

Recently, however, the supreme court considered this issue in *People v. Tidwell*, No. 108133 (January 22, 2010). There, as here, the defendant filed a successive postconviction petition, but neither included a motion seeking leave nor expressly requested leave to file it. *Tidwell*, slip op. at 2-3. Nonetheless, the trial court issued a six-page order denying the petition and concluding that the defendant had failed to meet the cause-and-prejudice test. *Tidwell*, slip op. at 3. The appellate court, however, found that the successive petition was not considered filed because the defendant failed to expressly seek leave of court prior to filing the successive petition. *Tidwell*, slip op. at 4. For that reason, the appellate court declined consideration of the defendant's allegations on appeal. *Tidwell*, slip op. at 4. The supreme court, however, vacated the appellate court's judgment and remanded the cause to that court for review of the merits of the trial court's ruling regarding the cause-and-prejudice test. *Tidwell*, slip op. at 9. The supreme court specifically explained:

"a successive postconviction petition is not considered 'filed'

for purposes of section 122–1(f), and further proceedings will not

8

follow, until leave is granted, a determination dependent upon a defendant's satisfaction of the cause-and-prejudice test. There is also a commonsense acknowledgment that a defendant who submits a successive postconviction petition wants to 'file' it and institute proceedings thereon. However, it is still defendant's burden to obtain leave, and he must submit enough in the way of documentation to allow a circuit court to make that determination. Certainly, no separate motion seeking leave is mandated by section 122–1(f) in its current form, nor, as we have demonstrated, is an explicit request even required *if* the circuit court sees fit to consider the matter and rule of its own accord. We find that circuit courts have that authority under the statute." (Emphasis in original.) *Tidwell*, slip op. at 8-9.

The discussion above indicates that, ideally, before or at the time of filing a successive petition, a defendant would ask the trial court for leave to file a successive petition, and the trial court would set the matter for a ruling on whether it should grant the defendant leave to file the successive petition. After reviewing the documentation that the defendant submits, the trial court would then determine whether the defendant has satisfied the requirements under section 122–1(f) of the Act, *i.e.*, the cause-and-prejudice test. If the trial court determines that the defendant has met the cause-and-prejudice test, then it rules in favor of granting leave to file a successive petition. If, however, the trial court finds that the defendant has failed to establish cause and prejudice, then it rules against granting leave to file a successive petition.

9

In this case, as in *Tidwell*, defendant did not file a motion seeking leave to file a successive petition and did not expressly ask for leave to file it. Also similar to *Tidwell*, the trial court in this case issued an eight-page order that considered, but ultimately rejected, defendant's allegations, concluding that defendant failed to meet the cause-and-prejudice test for filing a successive petition and that his actual innocence and *Brady* claims would not have changed the outcome of his trial, *i.e.*, he suffered no prejudice. As previously noted by the court in *Tidwell*, "Certainly, no separate motion seeking leave is mandated by section 122–1(f) in its current form, nor, as we have demonstrated, is an explicit request even required *if* the circuit court sees fit to consider the matter and rule of its own accord. We find that circuit courts have that authority under the statute." (Emphasis in original). *Tidwell*, slip op. at 8-9. Keeping these principles in mind, we disagree with the State's argument that the trial court was required to expressly grant leave to file a successive postconviction petition prior to evaluating it according to section 122–1(f) of the Act. The record reflects that the trial court found sufficient documentation in defendant's successive *pro se* petition to consider whether defendant had complied with the cause-and-prejudice test as provided in section 122–1(f) of the Act. Therefore, we reject the State's argument that there is " 'nothing further to discuss or review,' " because defendant's failure to obtain leave to file a successive petition " 'trumps anything that defendant's petition may contain.' " The State's reliance upon *People v. DeBerry*, 372 Ill. App. 3d 1056, 1060 (2007), is not persuasive because, as previously noted, the *Tidwell* court recognized that the circuit court has the authority to consider the matter and rule on its own accord even without a separate motion seeking leave to file a successive petition.

Finally, we note that a proposed 2007 House bill would amend section 122–1(f) to

specifically require a petitioner to seek leave by "filing a motion when he or she sends his or her proposed subsequent petition." 95th Ill. Gen. Assem., House Bill 3452, 2007 sess. As the *Tidwell* court pointed out, however, that bill was never voted out of a Senate committee. *Tidwell*, slip op. at 5-6. Although we express no opinion as to the merits of House Bill 3452, we do believe that section 122–1(f) is somewhat unclear as to the proper procedure a petitioner must follow in order to obtain leave from the trial court to file a successive petition. As such, this matter is one that deserves the attention of the General Assembly. Accord *People v. Daniel*, 379 Ill. App. 3d 748, 751 (2008) ("Should this pending legislation pass, it will add much needed clarity to this area of the law"). We now turn to the merits of defendant's claims.

## II. Defendant's Claim of Actual Innocence

Defendant contends that he presented the gist of a constitutional claim of actual innocence based upon newly discovered evidence. Specifically, defendant argues that Ginns's and Banks's affidavits establish that a third individual, Michael Blue, aimed a gun at defendant, thus corroborating his self-defense theory. The State responds that defendant's claim was properly dismissed because defendant forfeited the claim, failed to meet the cause-and-prejudice test, and failed to show that the proposed evidence would have exonerated him.

Where, as here, a defendant in a noncapital case alleges a claim of actual innocence in a successive postconviction petition, "the defendant is excused from showing cause and prejudice." *People v. Ortiz*, 235 Ill. 2d 319, 330 (2009); see also *Pitsonbarger*, 205 Ill. 2d at 459. To obtain relief under a claim of actual innocence, however, the evidence adduced by the defendant must first be "newly discovered," *i.e.*, it must be evidence that was not available at the defendant's original trial

and that the defendant could not have discovered sooner through diligence. *People v. Morgan*, 212 Ill. 2d 148, 154 (2004). It is well established that evidence is not "newly discovered" when it presents facts already known to a defendant at or prior to trial, even if the source of these facts may have been unknown, unavailable, or uncooperative. See *People v. Collier*, 387 Ill. App. 3d 630, 637 (2008), citing *People v. Moleterno*, 254 Ill. App. 3d 615, 625 (1993). In addition, the evidence must also be material, noncumulative, and of such conclusive character that it would probably change the result on retrial. *Morgan*, 212 Ill. 2d at 154.

In this case, defendant states in his successive petition that he was innocent of first degree murder because he knew a person was aiming a gun at him "as shots were being fired in close proximity to him but where he could not see who was doing the shooting and therefore acted to defend himself." Defendant also claims in his petition that on September 17, 2003, Officer Cronin visited defendant in prison and told defendant that he knew of a witness who saw someone aim a gun at defendant prior to defendant drawing his own gun. In the petition, defendant, however, replied that he knew the name of the person shooting at him and told his trial attorney at the time of his arrest. Defendant readily admits in his petition that he knew prior to trial that Michael Blue allegedly aimed a gun at him while shots were being fired; this evidence was therefore not "newly discovered". See *Morgan*, 212 Ill. 2d at 154 (holding that evidence is not newly discovered if it was available at the defendant's original trial). Therefore, defendant knew that Blue had supposedly aimed a gun at him prior to his trial, but nevertheless said nothing on direct appeal, or even in his first postconviction petition. In addition, the fact that he may not have known the names of alleged witnesses to Blue's aiming of a gun at defendant does not support defendant's assertion that his

proffered evidence is newly discovered. As noted above, if a defendant knew of certain facts at or prior to trial, those facts are not transformed into "newly discovered evidence" simply because the source of these facts may have been unknown, unavailable, or uncooperative. See *Collier*, 387 Ill. App. 3d at 637, citing *Moleterno*, 254 Ill. App. 3d at 625.

In addition, we cannot say that the proffered evidence would probably have changed the result on retrial. Defendant claims that he acted in self-defense. One of the required elements of self-defense that the State must negate is that the defendant was not the initial aggressor. See 720 ILCS 5/7-1 (West 2008); *People v. Jeffries*, 164 Ill. 2d 104, 127-28 (1995). The record in this case indicates that defendant and Williams were the initial aggressors, and defendant's proffered evidence does not change that fact. Defendant's affidavits and petition do not dispute the established testimony that codefendant Williams fired the first shots. It is well established that "the hallmark of 'actual innocence' means 'total vindication,' or 'exoneration.' " *Collier*, 387 Ill. App. 3d at 636, quoting *People v. Savory*, 309 Ill. App. 3d 408, 414-15 (1999). Therefore, even if defendant's allegations are true, the fact that he fired at an individual who aimed a gun at him after defendant's codefendant began firing does not change the fact that defendant and codefendant were the initial aggressors.

Defendant, however, argues that the trial court was required to take all well-pleaded facts as true, relying upon *People v. Reyes*, 369 Ill. App. 3d 1 (2006). Defendant's reliance is misplaced. *Reyes* involved the trial court's erroneous first-stage dismissal of the defendant's *initial* postconviction petition. This case concerns a successive postconviction petition, which typically requires a showing of cause and prejudice. 725 ILCS 5/122–1(f) (West 2006). Although successive

13

petitions claiming actual innocence are excused from showing cause and prejudice (see *Ortiz*, 235 Ill. 2d at 330), the newly discovered evidence supporting an actual innocence claim must, *inter alia*, have been unavailable at the defendant's original trial and material, noncumulative, and of such conclusive character that it would probably change the result on retrial. *Morgan*, 212 Ill. 2d at 154. The trial court properly examined defendant's claim of actual innocence and found that he failed to meet these requirements. *Reyes* is therefore not instructive.

### III.   Defendant's Ineffective Assistance of Counsel Claims

Defendant also contends that the trial court erred in dismissing his claim of ineffective assistance of counsel, arguing that he stated the gist of a constitutional claim based upon his assertions that his counsel failed to investigate his self-defense claim and "deprived [defendant] of his right to testify" by advising him not to testify that Michael Blue aimed a gun at him.

We note at the outset, however, that defendant could have raised this allegation in his direct appeal or in his *pro se* initial postconviction petition, but did not. Instead, defendant claimed on direct appeal that he received ineffective assistance of counsel based upon trial counsel's failure to file a motion to suppress guns that were found in the apartment where defendant was arrested. Three years after his conviction, defendant filed his initial *pro se* petition alleging seven issues:   a constitutional challenge to his sentence, two challenges to his indictment, a jury instruction challenge, ineffective assistance of trial counsel relating to the jury instruction issue, ineffective assistance of appellate counsel for failure to raise trial counsel's ineffective assistance regarding the jury instruction issue, and a claim that the State intentionally withheld defendant's blood sample while he was in custody. Nowhere in his direct appeal or in his initial petition does he allege that

his trial counsel was ineffective because of a failure to investigate his self-defense claim or because trial counsel advised him not to testify that Michael Blue aimed a gun at him. As such, his claim is forfeited. See *People v. Anderson*, 375 Ill. App. 3d 990, 1000-01 (2007) (holding that the defendant's successive claim of ineffective assistance of counsel for failure to investigate police corruption and coercion was forfeited because defendant did not make that allegation in his initial postconviction claim of ineffective assistance), citing *People v. Blair*, 215 Ill. 2d 427, 445 (2005).

Moreover, regarding his claim of ineffective assistance of counsel, defendant has failed to meet the cause-and-prejudice test for filing a successive claim. First, even if the jury had heard Ginns's testimony, the evidence would nevertheless show that defendant and codefendant were the initial aggressors and that defendant did not act in self-defense. Counsel does not render ineffective assistance for failure to investigate witnesses whose proposed testimony would not support the defendant's self-defense theory, namely, that the defendant was not the initial aggressor. See *People v. Hodges*, 234 Ill. 2d 1, 20 (2009). Defendant therefore cannot show prejudice because he cannot show that this alleged error "so infected" the trial that the resulting conviction or sentence violated due process. *Pitsonbarger*, 205 Ill. 2d at 464.

In addition, defendant has failed to establish "cause." Defendant merely asserts he was diligent but does not cite any objective factor external to the defense that impeded efforts to raise this ineffective assistance claim in an earlier proceeding--either his direct appeal or in his initial *pro se* petition. Defendant admits in his successive petition that he knew at the time of his arrest that it was Michael Blue who aimed a gun at him, which occurred prior to Officer Cronin allegedly visiting defendant in prison on September 17, 2003. Nonetheless, defendant never raised this matter at any

15

time, instead waiting more than six years to allege this in a successive petition.

Defendant argues that he could not have raised this claim on direct appeal because the record was not "sufficiently developed," citing *People v. Kunze*, 193 Ill. App. 3d 708, 726 (1990). Defendant's reliance on *Kunze* is misplaced. In *Kunze*, the defendant claimed his trial counsel was ineffective for failure to investigate his prior criminal history and for consequently advising him to testify. *Kunze*, 193 Ill. App. 3d at 724. The defendant then argued that he was deprived of his right to make an informed decision. *Kunze*, 193 Ill. App. 3d at 724-25. We stated:

> "[T]he alleged incompetence of [defendant's] trial attorney
> depends upon whether [defendant] would have testified, even if he
> had known in advance that the State would use his prior convictions
> to impeach him. No evidence in the record before us addresses this
> question, nor is there any evidence regarding consultations between
> [defendant] and his trial counsel or between [defendant's] counsel
> and counsel for the other defendants." *Kunze*, 193 Ill. App. 3d at 725.

The court then declined to resolve this claim on direct appeal because this concerned a matter outside of the record, which is "more appropriately addressed in proceedings on a petition for post-conviction relief." *Kunze*, 193 Ill. App. 3d at 725-26.

In the instant case, defendant's allegation centers on his assertions that his counsel failed to investigate his self-defense claim and deprived him of his right to testify by advising him not to testify that Michael Blue aimed a gun at him. We see nothing that would have prevented defendant from properly raising this matter on appeal. Moreover, he cites no objective factor external to the

defense that prevented him from raising this matter in his initial postconviction petition.  He only makes the general assertion that he was diligent, which is insufficient to establish cause. Accordingly, defendant's failure to meet both the cause and prejudice test results in forfeiture of this claim. See *Pitsonbarger*, 205 Ill. 2d at 459-60.

We further note that, even if we were to consider defendant's forfeited claim, we would be compelled to reject it.  Defendant must meet both prongs of the *Strickland* test, *i.e.*, he must show that trial counsel's actions were objectively unreasonable, and that, but for trial counsel's errors, there is a reasonable probability that the result of his trial would have been different.  See *People v. Klepper*, 234 Ill. 2d 337, 350 (2009).

In the instant case, defendant cannot show prejudice because the proffered evidence would not have supported his self-defense claim and consequently would not have changed the result of defendant's trial.  Therefore, defendant cannot meet the second prong of the *Strickland* test.  For the reasons previously discussed, defendant's forfeited claim of ineffective assistance of trial counsel is unavailing because he failed to satisfy both prongs of the *Strickland* test.

IV.  Defendant's *Brady* Claim

Defendant next contends that the trial court erred in denying his claim that the State failed to disclose exculpatory evidence–specifically, the name of Charles Ginns, who saw Michael Blue aim a gun at defendant–in violation of *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963).

Under *Brady*, the State must disclose evidence favorable to the accused and " 'material to guilt or to punishment.' "  *People v. Harris*, 206 Ill. 2d 293, 311 (2002), quoting *Brady*, 373 U.S.

at 87, 10 L. Ed. 2d at 218, 83 S. Ct. at 1196-97. This rule includes evidence known to police investigators, but not to the prosecutor. *People v. Beaman*, 229 Ill. 2d 56, 73 (2008), citing *Kyles v. Whitley*, 514 U.S. 419, 438, 131 L. Ed. 2d 490, 508, 115 S. Ct. 1555, 1568 (1995). A *Brady* claim requires a showing that: (1) the undisclosed evidence is favorable to the accused because it is either exculpatory or impeaching; (2) the evidence was suppressed by the State either willfully or inadvertently; and (3) the accused was prejudiced because the evidence is material to guilt or punishment. *People v. Burt*, 205 Ill. 2d 28, 47 (2001), citing *Strickler v. Greene*, 527 U.S. 263, 281-82, 144 L. Ed. 2d 286, 302, 119 S. Ct. 1936, 1948 (1999). Evidence is material if there is a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed. *Harris*, 206 Ill. 2d at 311, citing *Kyles*, 514 U.S. at 434, 131 L. Ed. 2d at 506, 115 S. Ct. at 1566; *United States v. Bagley*, 473 U.S. 667, 682, 87 L. Ed. 2d 481, 494, 105 S. Ct. 3375, 3383 (1985). To establish materiality, an accused must show " 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.' " *People v. Coleman*, 183 Ill. 2d 366, 393 (1998), quoting *Kyles*, 514 U.S. at 435, 131 L. Ed. 2d at 506, 115 S. Ct. at 1566. Illinois has also codified the rule. See 188 Ill. 2d R. 412(c).

Defendant, however, has forfeited this claim by failing to raise it in his initial postconviction petition. See *Anderson*, 375 Ill. App. 3d at 1011-12; see also *Pitsonbarger*, 205 Ill. 2d at 458; 725 ILCS 5/122-3 (West 2006) ("[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived"). As noted above, Detective Cronin's alleged refusal to disclose of the name of Charles Ginns occurred three years prior to the filing of defendant's initial postconviction petition in 2006. Moreover, even assuming that the allegation was true about Officer

18

Cronin refusing to give defendant the name of this alleged favorable witness and that defendant could not have included this at the time he filed his initial postconviction petition, defendant cannot meet the *Brady* materiality test because, as previously noted, there is no reasonable probability that the result of the proceeding would have been different. Even had the jury heard Ginns's testimony, the evidence demonstrates that defendant and codefendant were the initial aggressors and defendant did not act in self defense. Defendant's contention is therefore unavailing.

V. Defendant's Challenge to Certain Fees and Costs

Defendant next contends that the trial court erred in imposing a $50 State's Attorney fee, arguing, *inter alia*, that the successive petition was dismissed at the first stage, which does not allow for any involvement by the State's Attorney's office. We agree. Accordingly, we direct the clerk of the circuit court of Cook County to vacate that portion of the trial court's September 5, 2007, order imposing a $50 State's Attorney fee.

Finally, defendant contends that the trial court's imposition of a $294 filing fee pursuant to section 22-105 of the Code of Civil Procedure (Code) (735 ILCS 5/22-105 (West 2008)) must be vacated because the statute violates the equal protection clause by targeting prisoners to the exclusion of other indigent petitioners. This contention, however, has been repeatedly rejected by this court. See *People v. Smith*, 383 Ill. App. 3d 1078, 1096 (2008), *appeal denied*, 231 Ill. 2d 650 (2009); *People v. Carter*, 377 Ill. App. 3d 91, 106 (2007), *appeal denied*, 231 Ill. 2d 639 (2009); *People v. Hunter*, 376 Ill. App. 3d 639, 648 (2007), *appeal denied*, 233 Ill. 2d 578 (2009); *People v. Gale*, 376 Ill. App. 3d 344, 363 (2007), *appeal denied*, 233 Ill. 2d 574 (2009). Despite the overwhelming weight of authority against him, defendant nonetheless argues that those cases were

"wrongly" decided and invites this court to depart from its holdings in *Smith*, *Carter*, *Hunter*, and *Gale*, directing our attention to *Rinaldi v. Yeager*, 384 U.S. 305, 305-09, 16 L. Ed. 2d 577, 577-81, 86 S. Ct. 1497, 1497-1500 (1966). We decline to depart from these well-reasoned decisions.

*Rinaldi* concerned a New Jersey statute providing that only indigent prisoners receiving a free transcript for their appeal would have to reimburse the state if their appeal was unsuccessful. *Rinaldi*, 384 U.S. at 307, 16 L. Ed. 2d at 579, 86 S. Ct. at 1498-99. The *Rinaldi* court found no legislative history that indicated what the statute at issue was to achieve. *Rinaldi*, 384 U.S. at 309, 16 L. Ed. 2d at 580, 86 S. Ct. at 1500. Unlike *Rinaldi*, the instant case involves the imposition of court costs and filing fees for frivolous petitions, and the legislative history of section 22-105 clearly indicates that the purpose is to deter inmates from filing frivolous petitions and thereby impeding access to the courts by those with arguably meritorious claims. See generally, 95th Ill. Gen. Assem., House Proceedings, May 29, 2007, at 129-46 (statements of Representative Fritchey); see also *People v. Marshall*, 381 Ill. App. 3d 724, 737 (2008), citing *Gale*, 376 Ill. App. 3d at 360. In the factual context of the instant case, we do not find *Rinaldi* persuasive.

In the alternative, defendant argues that his filing fee should be reduced to $190 to reflect the maximum allowable fee for filing a civil pleading. The State does not address this argument in its brief. This petition was filed in the circuit court of Cook County. For counties like Cook County having a population of 3 million or more, pursuant to 705 ILCS 105/27.2a(g)(2) (West 2006), the maximum fee for filing a petition to vacate or modify any final judgment or order of court is $90 (with certain exceptions not relevant here). We are mindful that "[t]he purpose of a postconviction petition *** is to modify or vacate a final judgment, and as such, section 27.2a fees are applicable."

No. 1-07-2820

*Carter*, 377 Ill. App. 3d at 98, citing *Gale*, 376 Ill. App. 3d at 358; see also *Hunter*, 376 Ill. App. 3d at 646. We therefore direct the clerk of the circuit court of Cook County to modify the trial court's September 5, 2007, order to provide for a $90 fee for filing a postconviction petition under section 27.2a of the Clerks of Courts Act (705 ILCS 105/27.2a (West 2006)).

## CONCLUSION

Accordingly, we affirm the judgment of the circuit court, but vacate that portion of the trial court's September 5, 2007, order imposing $50 in State's Attorney's fees and direct the clerk of the circuit court of Cook County to modify that order to reflect a $90 fee for filing a petition for postconviction relief.

Affirmed as modified.

O'MARA FROSSARD, P.J., with GALLAGHER and NEVILLE, JJ., concurring.

21