NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 170557-U

NO. 4-17-0557

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 15, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee | ) | Circuit Court of |
|     v. | ) | Sangamon County |
| KEITH A. STANLEY, | ) | No. 91CF43 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | John Madonia, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE STEIGMANN delivered the judgment of the court.
Justices DeArmond and Holder White concurred in the judgment.

**ORDER**

¶ 1 *Held:* The appellate court granted counsel's motion to withdraw because no meritorious issues could be raised on appeal.

¶ 2 This case comes to us on the motion of the Office of the State Appellate Defender (OSAD) to withdraw as counsel. In September 2017, defendant, Keith A. Stanley, filed a motion for leave to file a successive postconviction petition in which he raised several claims that are framed as the State's failure to prove his guilt beyond a reasonable doubt. The trial court denied defendant's motion for leave to file a successive postconviction petition, concluding that he failed to show cause and prejudice, and defendant appealed.

¶ 3 In April 2019, OSAD filed a motion to withdraw. In its brief, OSAD contends that appeal of this case would be without arguable merit. We agree, grant OSAD's motion to withdraw as counsel, and affirm the trial court's judgment.

¶ 4 I. BACKGROUND

¶ 5                                    A. Procedural History

¶ 6            In April 1991, the State charged defendant with four counts of first degree murder (Ill. Rev. Stat. 1989, ch. 38, ¶¶ 9-1(a)(1), (a)(2), (a)(3)) and one count of aggravated battery (Ill. Rev. Stat. 1989, ch. 38, ¶ 12-4(a)). The charges were filed after defendant stabbed 73-year-old John Miletta to death on January 6, 1991. Because the full record of defendant's trial is unavailable, the facts of this case are taken from our previous opinion in *People v. Stanley*, 246 Ill. App. 3d 393, 615 N.E.2d 1352 (1993).

¶ 7                                    B. The Jury Trial

¶ 8            Carolyn Madison, who did housework for Miletta at his home in Springfield, testified that she met defendant in October 1990 and defendant began going to Miletta's house to help Madison with the housework. Madison also testified that she and defendant were forging some of Miletta's checks. On January 4, 1991, Miletta discovered that someone was forging his checks. Madison informed defendant that Miletta knew of the forgeries, and the next day defendant told Madison that he was leaving Springfield. Defendant had previously expressed his dislike of Miletta and threatened to kill both him and Madison.

¶ 9            Madison returned several times to Miletta's house over the course of the next few days, but each time the house was empty. On January 6, 1991, the police arrived and searched the residence. The police found Miletta's body in the basement of his residence with multiple stab wounds and skull fractures. The police also found a dented propane tank, which appeared to have blood smeared on it, and a mop with reddish stains on the handle and sponge. The police recovered fingerprints from the mop that matched defendant.

¶ 10           At trial, the State introduced defendant's bloodstained jacket and shoes. Phil Sallee, a forensic serologist (a person who analyzes blood, urine, saliva, and other bodily fluids

2

found at crime scenes), testified that Miletta's blood was present, in different degrees of probability, on Stanley's jacket, his shoes, and the mop handle recovered from Miletta's residence. The doctor who performed the autopsy testified that the mop and propane tank could have caused several of the wounds observed on the back of the skull.

¶ 11 The jury found defendant guilty of all the charges against him. The trial court sentenced defendant to concurrent terms of 95 years in prison for first degree murder and 10 years for aggravated battery.

¶ 12 C. The Direct Appeal

¶ 13 Defendant appealed his conviction, arguing that (1) the trial court erred by denying his *Batson* challenge; (2) the court erred by admitting the blood frequency probabilities showing that Miletta's blood was found on defendant's jacket and shoes, and the mop handle; (3) the conviction for aggravated battery should have been vacated because it was a lesser included offense of first degree murder; and (4) defense counsel's failure to present mitigating evidence at sentencing amounted to ineffective assistance of counsel. This court vacated defendant's conviction and sentence for aggravated battery and affirmed the remainder of trial court's judgment. *Stanley*, 246 Ill. App. 3d at 404.

¶ 14 D. The First Postconviction Petition

¶ 15 In June 1993, defendant filed his first postconviction petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 1992)). The trial court appointed counsel, and defendant filed an amended petition in April 1994, arguing that his constitutional rights were violated when his attorney refused to allow him to testify on his own behalf. Following an evidentiary hearing, the court dismissed defendant's petition. In December 1997, this court affirmed the dismissal, concluding that defendant's trial attorney did not deny

3

defendant the chance to testify; instead, defendant chose not to testify on his attorney's advice. *People v. Stanley*, No. 4-96-0621 (1997) (unpublished order under Illinois Supreme Court Rule 23). Defendant did not raise any other issues in his first postconviction petition.

¶ 16                    E. The Successive Postconviction Petition

¶ 17            In March 2017, defendant filed a motion for leave to file a successive postconviction petition and attached to it several claims. Many of defendant's arguments asserted the State's failure to prove his guilt beyond a reasonable doubt. Defendant first claimed the State did not prove him guilty of first degree murder beyond a reasonable doubt because of (1) Madison's unreliable testimony, (2) Madison's numerous entries into Miletta's house with another man, and (3) the State's failure to show defendant was at Miletta's residence at the time of Miletta's murder.

¶ 18            Defendant attached a copy of Madison's trial testimony and his own affidavit to support these arguments. Defendant's affidavit asserted that another man, William Bland, entered Miletta's home with Madison several times and previously worked at Miletta's residence. Defendant insisted that he would have testified to this fact at trial but for his counsel's advising him not to testify.

¶ 19            Defendant also claimed the State mismanaged and mishandled evidence, which created a reasonable doubt as to his guilt. To support this claim, defendant provided trial testimony from the doctor who performed the autopsy and the lead detective.

¶ 20            Defendant's third claim asserted two of the jailhouse witnesses at trial failed to provide enough specific information regarding the crimes charged. Defendant attached both witnesses' trial testimony to assert this point and also attacked the credibility of their testimony.

¶ 21            Defendant's final reasonable doubt claim alleged that Phil Sallee, the forensic

4

serologist, testified he could not determine specific blood types on the mop handle and that he did not test the mop handle for trace evidence, such as hair fiber content. Defendant attached Sallee's trial testimony to assert these points.

¶ 22        Defendant next asserted he was denied a fair trial where "evidence essential to the commission of the offense" was not submitted for "scientific examinations and review." Defendant argued error occurred when the State's fingerprint analysis of the mop handle failed to eliminate Madison and Bland, who could have committed the crime during the time period. Defendant submitted the trial testimony of the officer who analyzed the fingerprints and stated he did not compare the mop handle fingerprint with the prints of any other individuals and did not analyze the fingerprints with the Automated Fingerprint Identification System. The testimony also revealed the officer was not certified in fingerprint analysis.

¶ 23        Defendant next claimed that his defense counsel was ineffective for several reasons, but he did not attach any supporting documentation for this claim. Defendant's final argument was a claim of actual innocence based on the lack of deoxyriboneucleic acid (DNA) evidence connecting him to Miletta's murder. To support this claim, defendant attached the lead detective's testimony and trial transcripts in which Sallee testified the blood found on Stanley's shoes and jacket, and the mop handle, were not submitted for DNA testing.

¶ 24        The trial court dismissed defendant's successive postconviction petition for failure to show cause and prejudice. The court noted that these arguments should have been raised on direct appeal or in his first postconviction petition, and defendant's actual innocence claim attacked the State's case at trial as opposed to setting forth a colorable claim of actual innocence.

¶ 25                F. The Current Appeal and OSAD's Motion To Withdraw

5

¶ 26 In March 2017, defendant filed a notice of appeal, and OSAD was appointed to represent him. In April 2019, OSAD filed a motion to withdraw, stating that no meritorious issue could be raised on appeal. Defendant and the State have both filed motions in response.

¶ 27 In his response, defendant asserts that the mop handle should be DNA tested because his print is not on the handle and that defendant has never been able to obtain testing because the State has consistently denied it. Defendant requests that the test be ordered in accordance with 725 ILCS 5/116-1 (West 2016). (As the State points out, the correct statute is 725 ILCS 5/116-3 (West 2016)). Defendant did not make this request in his motion for leave to file his successive postconviction petition and only raises the issue in his response to OSAD's motion to withdraw.

¶ 28                                    II. ANALYSIS

¶ 29                        A. The Standard of Review and Applicable Law

¶ 30 Petitioners may only file a single postconviction petition, barring a handful of exceptions. 725 ILCS 5/122-1(f) (West 2016). In an initial postconviction proceeding, *res judicata* and waiver bar the raising of claims that were or could have been adjudicated on direct appeal. *People v. Pitsonbarger*, 205 Ill. 2d 444, 458, 793 N.E.2d 609, 620 (2002). "Any claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS 5/122-3 (West 2016). Because the Act accounts for the filing of a single petition, successive petitions waive claims of substantial denials of constitutional rights unless fundamental fairness requires a relaxed standard. *People v. Holman*, 2017 IL 120655, ¶ 25, 91 N.E.3d 849.

¶ 31 The cause and prejudice test is an analytical tool used to determine whether fundamental fairness requires that an exception be made to section 122-3 so that a claim raised in

a successive petition may be considered on its merits. *Pitsonbarger*, 205 Ill. 2d at 459. The Act

defines cause as "an objective factor that impeded his or her ability to raise a specific claim

during his or her initial post-conviction proceedings" and prejudice as an error that "so infected

the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f)

(West 2016). We review the denial of a motion to file a successive postconviction petition

*de novo*. *People v. Smith*, 2014 IL 115946, ¶ 21, 21 N.E.3d 1172.

¶ 32                    B. The Cause and Prejudice Test in This Case

¶ 33          When a petitioner attempts to raise a claim that was resolved on direct appeal or

in previous collateral proceedings, he is barred by *res judicata*. *Pitsonbarger*, 205 Ill. 2d at 458.

Two of defendant's claims assert that the blood testing done by Sallee was unreliable and that

defendant would have testified but for his attorney's advice against it, and his testimony would

have revealed new information. Because both of these claims have been previously adjudicated

by this court on direct appeal and in defendant's first postconviction motion, they are barred by

*res judicata*. *Stanley*, 246 Ill. App. 3d at 398-400; *People v. Stanley*, No. 4-96-0621 (1997)

(unpublished order under Illinois Supreme Court Rule 23).

¶ 34          Additionally, defendant relies entirely on trial testimony and his own proffered

affidavit to prove these claims, both of which were available to the defendant in earlier

proceedings. And because defendant cannot point to any objective factor that prevented him

from raising these claims in earlier postconviction proceedings, he cannot satisfy the cause

aspect of the cause and prejudice test. The same is true of defendant's multiple other claims—

namely, that the State failed to prove his guilt beyond a reasonable doubt due to (1) unreliable

trial testimony from witnesses, (2) failure to establish a sufficient opportunity, (3) the state's

mismanagement of evidence, (4) the inaccuracy of police documents, and (5) the lack of DNA

7

evidence connecting him to the crime. Because all of these claims rely on information available to defendant in earlier proceedings, we reject them.

¶ 35                                  C. Defendant's Actual Innocence Claim

¶ 36          When a defendant sets forth a claim of actual innocence in a successive post-conviction petition, he is excused from showing cause and prejudice. *People v. Ortiz*, 235 Ill. 2d 319, 330, 919 N.E.2d 941, 948 (2009). In order to succeed on a claim of actual innocence, a defendant must present new, material, noncumulative evidence that is so conclusive it would probably change the result on retrial. *People v. Coleman*, 2013 IL 113307, ¶ 96, 996 N.E.2d 617. New evidence (1) must have been discovered after the trial and (2) could not have been discovered earlier through the exercise of due diligence. *Id.* Evidence is not "newly discovered" when it presents facts already known to a defendant at or prior to trial, even if the source of these facts may have been unknown, unavailable, or uncooperative. *People v. Jarrett*, 399 Ill. App. 3d 715, 723, 927 N.E.2d 754, 763 (2010).

¶ 37          Defendant's actual innocence claim asserts that (1) the lack of DNA testing on blood samples taken from him and (2) the failure of the initial police report to mention the blood on defendant's shoes establish he was actually innocent. At trial, Sallee testified that no DNA testing was conducted on the blood recovered from defendant's jacket or shoes, or the mop handle. Another officer testified that he did not report seeing any blood on defendant's shoes at the time the shoes were collected as evidence. This testimony shows that defendant knew of the evidence he now claims support his actual innocence at least since the trial. A claim of actual innocence requires newly discovered evidence and this evidence is clearly not new. Accordingly, defendant's actual innocence claim fails.

¶ 38                                  III. CONCLUSION

¶ 39        OSAD's motion to withdraw is granted, and the trial court's judgment is affirmed.

¶ 40        Affirmed.