# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Green*, 2012 IL App (4th) 101034

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DONALD L. GREEN, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-10-1034 |
| Argued | May 15, 2012 |
| Filed | June 7, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The dismissal of defendant's second successive postconviction petition alleging his actual innocence of first-degree murder and aggravated criminal sexual assault of his six-month-old daughter was affirmed, since defendant never sought leave to file a successive postconviction petition, his petition failed to state a claim of actual innocence, and the "newly discovered" evidence he relied on did not raise the probability that it was "more likely than not that no reasonable juror would have convicted him in the light of the new evidence." |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 88-CF-189; the Hon. Peter C. Cavanagh, Judge presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael J. Pelletier, of State Appellate Defender's Office, of Springfield, and Thomas A. Lilien and Yasemin Eken (argued), both of State Appellate Defender's Office, of Elgin, for appellant.

John Milhiser, State's Attorney, of Springfield (Patrick Delfino, Robert J. Biderman, and Anastacia R. Brooks (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.

Justices Appleton and Knecht concurred in the judgment and opinion.

**OPINION**

¶ 1 Following an April 1989 trial, a jury convicted defendant, Donald L. Green, of (1) first degree murder (Ill. Rev. Stat. 1987, ch. 38, ¶ 9-1) and (2) aggravated criminal sexual assault (Ill. Rev. Stat. 1987, ch. 38, ¶ 12-14) in connection with the death of his six-month-old daughter. Shortly thereafter, the trial court sentenced defendant to 50 years in prison.

¶ 2 Following a direct appeal and a series of collateral attacks defendant, in November 2010, *pro se* filed a second successive postconviction petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 to 122-7 (West 2010)). The trial court later dismissed that second successive petition as "frivolous and patently without merit."

¶ 3 Defendant appeals, arguing that the trial court erred by dismissing his second successive postconviction petition because he raised a claim of (1) actual innocence based upon newly discovered evidence and (2) cause and prejudice based upon a *Brady* violation (*Brady v. Maryland*, 373 U.S. 83 (1963)). We disagree and affirm.

¶ 4                                    I. BACKGROUND

¶ 5 In March 1988, the State charged defendant with four counts of first degree murder, aggravated battery of a child, and aggravated criminal sexual assault (Ill. Rev. Stat. 1987, ch. 38, ¶¶ 9-1, 12-4.3(a), 12-14) in connection with the death of his six-month-old daughter, Lynn Allen.

¶ 6             A. Defendant's Trial, Conviction, Sentence, and Direct Appeal

¶ 7 The following is a summary of events based upon the evidence presented at defendant's April 1989 jury trial.

¶ 8 On February 14, 1988, defendant was left to watch Lynn when the baby's mother, Marilyn Allen, left the apartment they shared to run errands. Sometime later, defendant ran across the hallway to Sharon Floyd's apartment, carrying Lynn, who was limp, unconscious,

and not breathing. Defendant told Floyd that Lynn had been playing on the floor when she fell and bumped her head. Floyd attempted to revive Lynn, while defendant called 9-1-1.

¶ 9    When Lynn arrived at the hospital, she was comatose and not breathing. Lynn had bruises along her jaw, below her neck, and over the left side of her chest. Dr. Nancy B. Pollard, the attending physician, testified that she also noticed blood and a small tear at the entrance of Lynn's vagina. Indeed, Lynn had fresh blood in her diaper, swelling around the perineum, and a vaginal laceration. Despite attempts to save her, Lynn died the next day.

¶ 10    The focus of defendant's trial was to determine who and what caused Lynn's death. Several medical experts testified as to the probable cause of Lynn's injuries. Defendant provided numerous, conflicting explanations. As previously explained, defendant told Floyd that he and the baby were playing on the floor and that the baby had fallen over and hit her head. He told a nurse, however, that he attempted to wake Lynn and found her gasping for air, shaking, lethargic, with "white stuff" coming out of her mouth. The next day, defendant told the same nurse that he was carrying Lynn to the bathroom when she hit her head against the bathroom door and the bathroom mirror. Defendant also told the nurse that when he was carrying Lynn back to the bathroom, he tripped over a toy, and that she flew out of his arms onto the bed. Defendant told police investigators that he found blood in Lynn's diaper and that he shook the child. Defendant later told Terry Buchanan, a fellow inmate in the Sangamon County jail, that he had molested and killed Lynn.

¶ 11    Buchanan testified for the State that while he and defendant were housed together at the county jail, he heard defendant talking in his sleep and saying, "I didn't mean to do it." Buchanan later asked defendant about the incident and, in that conversation, defendant admitted to Buchanan that he molested and killed his daughter. Buchanan acknowledged that he was facing charges of armed robbery, residential burglary, unlawful restraint, and theft. He denied, however, having received any promises or bargains in exchange for his testimony.

¶ 12    On this evidence, the jury convicted defendant of (1) first degree murder (Ill. Rev. Stat. 1987, ch. 38, ¶ 9-1) and (2) aggravated criminal sexual assault (Ill. Rev. Stat. 1987, ch. 38, ¶ 12-14) in connection with Lynn's death. Shortly thereafter, the trial court sentenced defendant to 50 years in prison.

¶ 13    Defendant appealed, and in October 1990, this court affirmed his convictions and sentence. *People v. Green*, No. 4-89-0545 (Oct. 11, 1990) (unpublished order under Supreme Court Rule 23).

¶ 14                    B. Defendant's Postconviction Petitions

¶ 15    In April 1991, defendant *pro se* filed his first petition under the Act (Ill. Rev. Stat. 1987, ch. 38, ¶¶ 122-1 to 122-8). The trial court thereafter appointed counsel to amend defendant's petition. Defendant's amended petition included, in part, the allegation that (1) "upon information and belief, Buchanan was planted in [defendant's] jail cell by law enforcement authorities for the purpose of extracting statements" and (2) his trial counsel was ineffective for failing to investigate that fact. In July 1994, the court dismissed defendant's petition, finding that his claim related to Buchanan was "totally conclusory," adding that defendant failed to support his allegations with an affidavit. Defendant appealed, and in May 1996, this

court affirmed. *People v. Green*, No. 4-94-0674 (May 30, 1996) (unpublished order under Supreme Court Rule 23).

¶ 16 In April 1997, defendant *pro se* filed a successive postconviction petition, alleging that the State suborned perjury by allowing Buchanan to testify falsely at defendant's trial. Defendant attached to his petition the transcript from Buchanan's May 1989 guilty plea hearing, which showed that Buchanan had negotiated away several charges and agreed to a sentence of 3 years of probation followed by 90 days in jail. The trial court later denied defendant's petition for lack of jurisdiction. Defendant appealed, and in July 1998, this court reversed and remanded for further proceedings. *People v. Green*, No. 4-97-1054 (July 15, 1998) (unpublished order under Supreme Court Rule 23).

¶ 17 On remand, defendant *pro se* filed an amended successive postconviction petition. The trial court thereafter appointed attorney Jeff Page to represent defendant and Page retained private investigator Bill Clutter to assist him. In September 2003, Page filed an amended successive petition on defendant's behalf, alleging that the State misled the jury concerning its dealings with Buchanan. The court later dismissed defendant's successive petition, finding that the claims in defendant's petition were "conclusory in nature and not supported by the facts." Defendant appealed, and in October 2005, this court affirmed, concluding that defendant failed to (1) argue the cause and prejudice standard for filing a successive petition and (2) make a claim of actual innocence to excuse his failure to raise his claims in his earlier petitions. *People v. Green*, No. 4-04-0125 (Oct. 20, 2005) (unpublished order under Supreme Court Rule 23).

¶ 18 In November 2010, defendant *pro se* filed a second successive postconviction petition, asserting that he was actually innocent based upon newly discovered evidence and that the State violated his right to due process of law when it failed to comply with *Brady*. As part of his claim, defendant explained that he received, as part of a Freedom of Information Act (FOIA) request, a February 2003 memorandum describing an interview that Clutter conducted with Buchanan. That memorandum included the following excerpt:

"Buchanan stated that he and [defendant] shared the same jail cell in the Sangamon County [j]ail. [Defendant] was talking in his sleep, stating he didn't mean to do it. 'When he woke up, he told me everything,' said Buchanan.

Before [Buchanan] testified, he stated that he [did] recall having a discussion with prosecutors about getting a break on his case for testifying against [defendant]. 'After the fact, they did reduce my sentence,' said Buchanan. He said he remembers [Assistant State's Attorney] Carol Walker telling him this, but most of his discussions concerning the case were with State's Attorney Donald Cadigan, he said.

However, at the time he testified, he said he did not expect to get a break on his case. 'I wasn't really expecting it,' said Buchanan. He stated that his attorney told him he would likely receive probation anyway, since it was his first offense."

Defendant asserted that this memorandum from Clutter showed that Buchanan testified falsely at defendant's trial when he testified that he had not made any deals or received any promises from the State in exchange for his testimony. Defendant further alleged that the State was in possession of this information at the time of trial but did not turn it over to his

trial counsel.

¶ 19    In November 2010, the trial court dismissed defendant's second successive petition as "frivolous and patently without merit." As part of its judgment, the court entered a written order, which stated, in pertinent part, as follows:

"A review of the court file indicates that on December 4, 2002, [the trial court] appointed Clutter to interview Buchanan concerning statements Buchanan made at *** [d]efendant's trial. Clutter prepared a Memorandum of Interview, dated February 26, 2003, that was provided to [d]efendant's post[ ]conviction counsel, Jeff Page. On September 15, 2003, Page filed a Second Amended Second Petition for Post-Conviction Relief, setting forth allegations regarding Buchanan's testimony. These same allegations are the substance of [d]efendant's Third Petition for Post-Conviction Relief. They were discovered prior to the February 26, 2003[,] Clutter Memorandum of Interview and were discovered prior to Page filing his September 15, 2003[,] Second Amended Second Petition for Post-Conviction Relief. Therefore, they cannot be deemed 'new evidence' to support [d]efendant's claim of actual innocence."

¶ 20    This appeal followed.


¶ 21                                    II. ANALYSIS

¶ 22    Defendant argues that the trial court erred by dismissing his second successive postconviction petition. Specifically, defendant contends that the court erred by dismissing his petition because he raised a claim of (1) actual innocence based upon newly discovered evidence and (2) cause and prejudice based upon a *Brady* violation. We address defendant's contentions in turn.

¶ 23    We begin our analysis by pointing out that we have explicitly not included, in outlining defendant's arguments, defendant's assertion that he stated the "gist" of a claim of (1) actual innocence and (2) cause and prejudice. We have done so because that first-stage standard has been flatly rejected by the supreme court in the context of a successive petition. See *People v. Edwards*, 2012 IL 111711, ¶ 27, 2012 WL 13564192 ("there is simply no basis in [section 122-1(f)] for applying a first-stage analysis to a *successive* petition" (emphasis in original)).


¶ 24                       A. Defendant's Failure To File a Motion for

                                Leave To File a Successive Petition

¶ 25    Before proceeding to the merits of defendant's appeal, we note that our review of the record shows that defendant failed to seek leave to file his second successive postconviction petition as required by section 122-1(f) of the Act (725 ILCS 5/122-1(f) (West 2010)). In *People v. DeBerry*, 372 Ill. App. 3d 1056, 1060, 868 N.E.2d 382, 384 (2007), this court held that the trial court need not–and should not–concern itself with the merits of a successive postconviction petition when the defendant has not first sought leave to file a successive petition under section 122-1(f) of the Act. Three years after our *DeBerry* decision, the supreme court explained that a defendant need not first file a formal motion seeking leave to file a successive petition if the trial court is satisfied that the defendant has submitted

sufficient documentation to allow the court to make a determination under section 122-1(f), as follows:

> "[A] successive postconviction petition is not considered 'filed' for purposes of section 122-1(f), and further proceedings will not follow, until leave is granted, a determination dependent upon a defendant's satisfaction of the cause-and-prejudice test. There is also a commonsense acknowledgment that a defendant who submits a successive postconviction petition wants to 'file' it and institute proceedings thereon. However, it is still defendant's burden to obtain leave, and he must submit enough in the way of documentation to allow a circuit court to make that determination. Certainly, no separate motion seeking leave is mandated by section 122-1(f) in its current form, nor, as we have demonstrated, is an explicit request even required *if* the circuit court sees fit to consider the matter and rule of its own accord. We find that circuit courts have that authority under the statute." (Emphasis in original.) *People v. Tidwell*, 236 Ill. 2d 150, 161, 923 N.E.2d 728, 734-35 (2010).

Accordingly, when, as here, the trial court is satisfied that a defendant has submitted sufficient documentation to allow the court to make a determination under section 122-1(f), the trial court may do so and choose to address the defendant's successive petition on the merits. When, however, the trial court is not satisfied that the defendant has submitted sufficient documentation in that regard, the court can–and should–dismiss the defendant's successive petition without concerning itself with the merits of the defendant's claims.

¶ 26    Having concluded that our review of the trial court's dismissal of defendant's successive postconviction petition is not limited, given that the trial court in this case saw fit to "consider the matter and rule of its own accord" (*Tidwell*, 236 Ill. 2d at 161, 925 N.E.2d at 735), we begin our analysis with a review of the Act (725 ILCS 5/122-1 to 122-7 (West 2010)) and the standard of review.

¶ 27            B. The Post-Conviction Hearing Act and the Standard of Review

¶ 28    The Act (725 ILCS 5/122-1 to 122-7 (West 2010)) " 'provides a procedural mechanism in which a convicted criminal can assert "that in the proceedings which resulted in his *** conviction there was a substantial denial of his *** rights under the Constitution of the United States or of the State of Illinois or both." ' " *People v. Cathey*, 2012 IL 111746, ¶ 17, 2012 WL 966178 (quoting *People v. Harris*, 224 Ill. 2d 115, 124, 862 N.E.2d 960, 966 (2007), quoting 725 ILCS 5/122-1(a) (West 2002)). Under the plain language of the Act, a petitioner may file only one petition without first seeking leave of court to file a subsequent petition. 725 ILCS 5/122-1(f) (West 2010). Thus, "although exceptions may be made in certain circumstances, the Act contemplates the filing of only one post[ ]conviction petition." *People v. Pitsonbarger*, 205 Ill. 2d 444, 456, 793 N.E.2d 609, 619 (2002). In seeking leave of court, a petitioner must demonstrate "cause for his *** failure to bring the claim in his *** initial post[ ]conviction proceedings and prejudice result[ing] from that failure." 725 ILCS 5/122-1(f) (West 2010). The Act goes on to elaborate on this "cause-and-prejudice" test, as follows:

> "(1) a prisoner shows cause by identifying an objective factor that impeded his ***

ability to raise a specific claim during his *** initial post[ ]conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his *** initial post[ ]conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f)(1), (2) (West 2010).

¶ 29     When, however, a petitioner sets forth a claim of actual innocence in a successive postconviction petition–that is, he can demonstrate a "fundamental miscarriage of justice"–he is "excused" from showing cause and prejudice. (Internal quotation marks omitted.) *People v. Ortiz*, 235 Ill. 2d 319, 329-30, 919 N.E.2d 941, 947-48 (2009).

¶ 30     The trial court in this case dismissed defendant's second successive postconviction petition without "finding facts" and, thus, we review its judgment *de novo*. See *People v. Guerrero*, 2012 IL 112020, ¶ 13, 963 N.E.2d 909 (reviewing the denial of a successive postconviction following a hearing for " '[m]anifest error,' " noting that absent fact finding, the appropriate review is *de novo*); *People v. Anderson*, 401 Ill. App. 3d 134, 138, 929 N.E.2d 1206, 1209-10 (2010) (modified upon petition for rehearing). In undertaking our review of the court's judgment, we may affirm on "any basis supported by the record if the judgment is correct." *Anderson*, 401 Ill. App. 3d at 138, 929 N.E.2d at 1210.


¶ 31                    C. Defendant's Claim of Actual Innocence

¶ 32     Defendant first contends that he stated a claim of "actual innocence" because Clutter's memorandum revealed "newly discovered" evidence that could have been used to impeach Buchanan. Specifically, defendant asserts that the trial court erred by dismissing his petition because the contents of Clutter's memorandum showed that Buchanan lied under oath, which was "critical" to the jury's credibility determination. We disagree.

¶ 33     Initially, we note that Illinois has few cases regarding the standards for dismissing and addressing successive postconviction petitions based upon claims of actual innocence. We find particularly instructive, however, Justice Murphy's scholarly analysis in *Anderson*, 401 Ill. App. 3d at 138-42, 929 N.E.2d at 1209-12.

¶ 34     In *Anderson*, the defendant, George Anderson, was found guilty following a November 1994 bench trial of first degree murder and two counts of attempt (first degree murder) for his involvement in a shootout between rival gangs. *Id.* at 136, 929 N.E.2d at 1208. Anderson appealed, and the appellate court affirmed. *Id.* In November 2006, following a series of collateral attacks, Anderson filed a fourth successive postconviction petition, in which he alleged, among other things, that the State (1) committed prosecutorial misconduct by using perjured testimony at trial and (2) improperly withheld exculpatory evidence in violation of *Brady*. *Id.* at 137, 929 N.E.2d at 1208-09. Anderson attached to his petition an affidavit from a potential witness, Jerome Johnson, who claimed that he was lied to by Anderson's attorneys so that he would not testify at Anderson's trial. *Id.*, 929 N.E.2d at 1209. Johnson averred that Anderson did not assist in the shooting but merely drove Johnson to pick up his car after the shootings. *Id.* The trial court later denied Anderson's petition. *Id.* at 138, 929 N.E.2d at 1209.

¶ 35     Anderson appealed, arguing that the trial court erred by dismissing his petition because Johnson's claims were "newly discovered" evidence sufficient to support his claim of actual

innocence. *Id.*, 929 N.E.2d at 1209-10. In rejecting Anderson's contention in this regard, the court–citing its previous holding in *People v. Collier*, 387 Ill. App. 3d 630, 636, 900 N.E.2d 396, 403 (2008), and the supreme court's decision in *Ortiz*, 235 Ill. 2d at 330, 919 N.E.2d at 948–explained that for purposes of claims of actual innocence, "newly discovered" evidence is evidence that (1) was not available at the defendant's trial, (2) the defendant could not have discovered sooner through due diligence, and (3) is material and noncumulative. *Anderson*, 401 Ill. App. 3d at 140, 929 N.E.2d at 1211-12. But, perhaps most important, such evidence " 'must be of such conclusive character that it would probably change the result on retrial.' " *Id.* at 141, 929 N.E.2d at 1212 (quoting *Collier*, 387 Ill. App. 3d at 636, 900 N.E.2d at 403). Applying this standard to the facts of Anderson's case, Justice Murphy wrote, as follows:

> "[U]nder the Act and *Collier* and *Ortiz*, for a successive petition to survive dismissal, the defendant must present evidence that is material to the issue and not cumulative of the evidence presented at trial. [Anderson] was convicted under an accountability theory for the actions of Johnson. Johnson's affidavit does not vindicate [Anderson]. At best, his testimony could have been used in considering the weight of [Anderson's] custodial statement. Johnson's statement is cumulative of [Anderson's] testimony at trial–that [Anderson] drove him to retrieve his vehicle and that they did not plan on a shooting. Perhaps Johnson's statement would provide a basis to argue the existence of a reasonable doubt, but as the State highlights, that is not the standard as addressed in *Collier* and affirmed in *Ortiz*. The trial court and this court have repeatedly affirmed [Anderson's] conviction and accepted the evidence the State presented at trial. Johnson's statements cannot overcome that evidence to exonerate [Anderson]. We find the allegedly newly discovered evidence fails to establish actual innocence and agree with the State that the trial court properly dismissed [Anderson's] petition." *Anderson*, 401 Ill. App. 3d at 141-42, 929 N.E.2d at 1212.

¶ 36 Like Anderson's petition, defendant's petition in this case failed to state a claim of actual innocence. See *Edwards*, 2012 IL 111711, ¶ 33, 2012 WL 1356492 ("documentation must set forth a colorable claim of actual innocence, *i.e.*, they must raise the probability that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence"). Here, the jury convicted defendant of sexually assaulting and murdering Lynn. No part of Clutter's February 26, 2003, memorandum of interview in any way exonerates defendant. At best, the information contained in Clutter's memorandum could be used to attempt to impeach Buchanan's credibility. In other words, the best that can be said is that the information included in Clutter's memorandum could be used to argue to the jury that Buchanan lied in exchange for concessions from the State about what defendant told him when they shared a jail cell–an argument the jury would, of course, be free to reject. Perhaps, like Johnson's statement in *Anderson*, the information contained in Clutter's memorandum would provide a basis to assert a reasonable doubt argument, but that is not the standard; the standard is *actual innocence*. Compare *Ortiz*, 235 Ill. 2d at 337, 919 N.E.2d at 952 (concluding that the defendant presented newly discovered evidence that directly contradicted the recanted testimony of two of the State's witnesses, which constituted a claim of actual innocence because no physical evidence was presented to link the defendant to the

murder). The alleged newly discovered evidence in this case would merely serve to contradict–if accepted by the jury–Buchanan's own testimony through impeachment. It would not contradict the State's other evidence of defendant's guilt–namely, that defendant (1) was alone with Lynn when her injuries occurred, (2) had several inconsistent stories about what happened to Lynn, (3) inflicted Lynn's injuries, which included considerable bruising and lacerations consistent with sexual assault, and (4) told police that he had shaken Lynn. Our review of the information contained in Clutter's memorandum shows that it cannot overcome this other evidence of defendant's guilt to exonerate defendant. Or, in the words of the supreme court, defendant's "newly discovered" evidence does not raise the probability that it is "more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Edwards*, 2012 IL 111711, ¶ 33, 2012 WL 1356492.

¶ 37                                  D. Defendant's *Brady*-Violation Claim

¶ 38        Defendant next contends that the trial court erred by dismissing his second successive postconviction petition because he raised a claim of "cause and prejudice" under section 122-1(f) of the Act based upon a *Brady* violation. We disagree.

¶ 39        "Under *Brady*, the State must disclose evidence favorable to the accused and ' "material to guilt or to punishment." ' " *People v. Jarrett*, 399 Ill. App. 3d 715, 727, 927 N.E.2d 754, 766 (2010) (quoting *People v. Harris*, 206 Ill. 2d 293, 311, 794 N.E.2d 181, 193 (2002), quoting *Brady*, 373 U.S. at 87). To establish a *Brady* violation, a defendant must show, in pertinent part, that (1) the undisclosed evidence is favorable to the accused because it was impeaching; (2) the evidence was suppressed by the State; and (3) the accused was prejudiced because the evidence is material to guilt. *Jarrett*, 399 Ill. App. 3d at 727-28, 927 N.E.2d at 766. "Evidence is material if there is a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed." *Id.* at 728, 927 N.E.2d at 766.

¶ 40        Here, defendant asserts that the State's alleged failure to disclose its plea negotiations with Buchanan prejudiced him because that evidence was material to his guilt. Defendant's assertion in this regard, however, is not the type of claim contemplated by section 122-1(f) of the Act. As previously stated, the Act contemplates the filing of only one postconviction petition and allows a successive petition as an exception to that rule when new evidence comes to light, giving rise to a new *claim*. See 725 ILCS 5/122-1(f) (West 2010) ("Leave of court may be granted only if a petitioner demonstrates cause for his *** failure to bring the *claim* in his *** initial post[ ]conviction proceedings." (Emphasis added.)). Defendant's claim that the State failed to disclose the fact that it had engaged in plea negotiations with Buchanan is not new. Clutter's memorandum that defendant recently uncovered pursuant to a FOIA request may arguably be *additional* evidence to support that claim, but that does not make that claim new. Defendant has asserted, in one form or another, in each of his previous collateral attacks, the claim that the State failed to disclose its negotiations with Buchanan. Moreover, even if defendant's claim were new, defendant could not meet the *Brady* materiality test because, as we explained in rejecting defendant's claim of actual innocence, no reasonable probability exists that the result of his trial would have been different. At trial,

defense counsel vigorously challenged Buchanan's veracity–indeed, counsel argued that Buchanan hoped to receive favorable consideration from the State in exchange for his testimony. Of course, Buchanan testified that he had no such an expectation. Thus, even if defendant had attempted to impeach Buchanan with the additional evidence that he was receiving a "break" in exchange for his testimony–which we note does not necessarily mean that the jury would have rejected his testimony–the additional evidence of defendant's guilt demonstrates that the result of his trial would not have been different.

¶ 41                                   III. CONCLUSION

¶ 42        For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we award the State its $75 statutory assessment against defendant as costs of this appeal.


¶ 43        Affirmed.