NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 180600-U

NO. 4-18-0600

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 21, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| KEVIN E. HEMINGWAY, | ) | No. 09CF1438 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Heidi N. Ladd, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Turner and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court did not err by denying defendant's motion for leave to file a successive postconviction petition.

¶ 2    In May of 2018, defendant, Kevin E. Hemingway, *pro se* filed a motion for leave to file a successive postconviction petition, which the trial court denied. Defendant appeals, arguing he demonstrated cause and prejudice as required to file a successive postconviction petition. We affirm.

¶ 3                          I. BACKGROUND

¶ 4    On August 18, 2009, the State charged defendant with armed robbery with a firearm (720 ILCS 5/18-2(a)(2) (West 2008)). The cause proceeded to a jury trial.

¶ 5    At trial, the State adduced the following facts. Terri Herbst was an employee at a

McDonald's restaurant in Champaign where her duties included taking cash deposits from the restaurant to the bank. Before any cash deposits were removed from the building, the currency was divided by denomination and "bundled" "[w]ith a rubber band." At approximately 11 a.m. on August 17, 2009, Herbst exited the McDonald's restaurant with that day's cash deposit, estimated to be "[b]etween two thousand and three thousand" dollars. As Herbst neared her car, a man approached her and demanded she "[h]and [him] [the] money." The man pointed a black, semi-automatic handgun at Herbst, who refused to give up the money. Eventually, Herbst's assailant struck her on the head with the handgun, pushed her down, grabbed the deposit bag, and fled.

¶ 6        Soon after the assault, a man wearing clothes matching the description given by Herbst was spotted near the McDonald's restaurant entering "a gold car or a gold-colored car." The police were provided the car's license plate number and drove to the address of the car's owner a short time later. A few minutes after the police arrived at the address, a gold-colored car also arrived. Defendant and two others exited the vehicle. Police searched defendant and found in his possession "four different bundles of currency that were bundled with rubber[ ]bands, in addition to a small amount of change and some other miscellaneous items." Two bundles of currency in defendant's possession contained one-dollar bills, another bundle contained twenty-dollar bills, and the fourth bundle contained a mixture of five and ten-dollar bills. The value of the currency police found in defendant's possession was approximately $1900. The police searched the gold-colored car and discovered a black, semi-automatic handgun and a receipt from Sprint that had been printed at 11:17 a.m. that morning which documented that defendant had paid his $297 cellphone bill in cash.

¶ 7        Defendant was taken to the Champaign Police Department and questioned.

Although defendant initially stated he was not involved in the robbery, he later gave a recorded statement in which he confessed to the crime.

¶ 8          During the State's case-in-chief, only two witnesses who observed Herbst being robbed were able to identify defendant as her assailant. The first witness, Jason Townsend, testified he observed a man "run[ ] up, and he pulled up a bandana, and he had a gun in his hand *** [and he] grabb[ed] the [money] bag and point[ed] [the gun] at [Herbst]." Townsend clarified the assailant's face was not covered the entire time Townsend observed him but that "he pulled up the bandana" as he approached Herbst. Townsend testified he "g[o]t a chance to look at [the] person's face as he was running up towards [Herbst]" and provided an in-court identification of defendant as the person who assaulted Herbst. Sarah Adamson also identified defendant as Herbst's assailant. Adamson testified she was in the drive-thru at McDonald's when she observed a "young, black gentleman" enter the McDonald's parking lot with "a black bandana across his face." Adamson watched the man as he "pull[ed] a gun out of his pocket[,] *** approach[ed] [a] woman in the parking lot[,]" and "started struggling" with the woman. Adamson testified defendant was the man she observed, explaining that although the assailant had a bandana over his face when Adamson saw him, defendant "fit[ ] what [she] remember[ed]."

¶ 9          The jury convicted defendant and the trial court subsequently sentenced him to 38 years in prison. Defendant later filed a motion to reconsider sentence which the trial court granted, reducing defendant's sentence to 35 years.

¶ 10          Defendant appealed his sentence, arguing the trial court erred in imposing certain fines. *People v. Hemingway*, 2011 IL App (4th) 100701-U, ¶ 4. We remanded for the trial court to make specified adjustments to the amount of defendant's fines but otherwise affirmed the court's judgment. *Id.* ¶ 22.

¶ 11 On August 9, 2012, defendant *pro se* filed a petition for postconviction relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2010)). In his postconviction petition, defendant alleged: (1) the video of defendant's confession, which had been played at trial, was "the fruit of an illegal arrest"; (2) trial counsel "failed to file a pre-trial motion to quash arrest and suppress evidence"; (3) "appellate counsel was ineffective for not raising the argument that trial counsel was ineffective for not filing a pretrial motion to [quash] arrest and suppress any evidence"; and (4) trial counsel erred by "not putting [defendant's] alibi witness on the stand." On October 22, 2012, the trial court dismissed defendant's postconviction petition, finding it "fail[ed] to state the gist of a constitutional claim" and was "frivolous and patently without merit."

¶ 12 Defendant appealed the trial court's dismissal of his postconviction petition. On appeal, defendant argued "(1) his trial counsel rendered ineffective assistance in the jury trial by failing to call an alibi witness, Tiffany Steele, and (2) his appellate counsel rendered ineffective assistance on direct appeal by failing to argue that the sentence was excessive." *People v. Hemingway*, 2014 IL App (4th) 121039, ¶ 1, 14 N.E.3d 1238. We initially rejected both of defendant's contentions. See *id.* ¶ 33. However, at the direction of our supreme court, we later vacated our judgment and reconsidered defendant's claims. *People v. Hemingway*, 2016 IL App (4th) 121039-UB, ¶ 3. We ultimately remanded defendant's case for the trial court to conduct further proceedings on whether trial counsel should have called Tiffany Steele as an alibi witness. *Id.* ¶ 4. Regarding defendant's second claim, we wrote "[t]here is some question of whether the *pro se* petition can be reasonably interpreted as raising [an excessive sentence] claim[ ]" and, on remand, "the appointed postconviction counsel [could] raise that claim more explicitly[ ] in an amended petition, if he or she sees fit to do so." *Id.* ¶ 15.

¶ 13    On remand, defendant's appointed postconviction counsel filed an amended postconviction petition and a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013). In the amended petition, defendant alleged trial counsel had been ineffective for failing to call Tiffany Steele as an alibi witness, trial counsel had been ineffective for objecting to a jury request to review certain evidence, and the trial court had erred in denying the jury's request to review certain evidence. The amended petition did not include an allegation that appellate counsel was ineffective for failing to challenge defendant's sentence.

¶ 14    The trial court conducted an evidentiary hearing on defendant's amended postconviction petition. In support of his claims, defendant testified on his own behalf and presented the testimony of Tiffany Steele. The State presented testimony from defendant's trial counsel. During the State's examination of defendant's trial counsel, the following colloquy occurred:

"Q.  When you took over [defendant's] case, did you have an opportunity to review all the disclosure materials, police reports and other evidence that was provided to you?

A.  Yes.

Q.  That included police reports, included audio video recordings of the defendant's statement and so on?

A.  Yes.

Q.  Did you have adequate time to go over those items?

A.  Yes, I did.

Q.  Did you review those items with your client, Mr. Hemingway?

A.  Yes."

At the end of the hearing, the court denied defendant's postconviction petition.

¶ 15    Defendant appealed the denial of his postconviction petition, arguing postconviction counsel acted unreasonably by failing to include in the amended petition a claim that "(1) trial counsel had rendered ineffective assistance in the jury trial by failing to impeach Townsend and Adamson with their prior statements to the police that they would be unable to recognize the robber, and (2) appellate counsel had rendered ineffective assistance on direct appeal by failing to challenge the 35-year prison sentence as excessive." *People v. Hemingway*, No. 4-17-0011 (2017) (unpublished summary order under Illinois Supreme Court Rule 23(c)). We rejected both of defendant's claims, finding postconviction counsel was not obligated to include either allegation in the amended petition because defendant had failed to include them in his original petition. *Id.*

¶ 16    Subsequently, defendant *pro se* filed a motion for leave to file a successive postconviction petition in which he asserted two claims relevant to this appeal. Defendant's first claim was that trial counsel was ineffective for "failing to impeach State[']s witnesses Jason Townsend and Sarah Adamson with their prior statements to detectives." Defendant alleged there was both "cause for [his] failure to raise [this] claim[ ] *** in [his] previous [postconviction] petition" and "prejudice resulting from the failure to bring the claims earlier." Regarding cause, defendant argued he had been unable to raise this contention in his original or amended postconviction petition because he did not "obtain[ ] [the] police reports which contain[ed] [the] evidence [until] after [his] postconviction [petition] was already filed," "had no actual knowledge of the statements contained in the police [report] until [he] received [the] police reports and learned of [the] violations," and postconviction counsel "refused to include the claims in the amended petition." Defendant included in his motion letters he had sent to the trial court requesting access to documents relevant to his case. Defendant also included in his motion letters he had received

from his appellate counsel and the appellate court explaining to defendant why they could not provide him with documents relevant to his case. In one such letter dated January 18, 2012, the Fourth District appellate court clerk informed defendant that if he wanted access to "discovery material, witness and police statements, and transcripts of recorded statements," he would have to "make [his] request to the police agency directly and/or the Circuit Court Clerk in Champaign County." On February 27, 2014, defendant issued a Freedom of Information Act (FOIA) (5 ILCS 140/1 *et seq.* (West 2012)) request to the City of Champaign for records relating to his case. His request was granted several days later.

¶ 17    Defendant's final claim included in his motion, and the only other claim relevant to this appeal, stated, in its entirety:

"Also[,] postconviction counsel was ineffective, or highly unreasonable and was not working in the best interest of the defendant, when she failed to raise the issue of excessive sentencing. She knew of [the] issue[ ] but refused to raise it [because she was] ineffective, neglectful, and her assistance fell way below a reasonable level of assistance."

¶ 18    The trial court later denied defendant's motion, finding defendant "failed to meet the cause and prejudice test for leave to file a successive postconviction [petition]."

¶ 19    This appeal followed.

¶ 20                                    II. ANALYSIS

¶ 21    On appeal, defendant argues he demonstrated cause and prejudice as required to file his successive postconviction petition. We review the trial court's judgment *de novo* and may affirm the court's judgment on "any basis supported by the record if the judgment is correct." *People v. Green*, 2012 IL App (4th) 101034, ¶ 30, 970 N.E.2d 101.

¶ 22         "The Act provides a procedural mechanism in which a convicted criminal can assert that there was a substantial denial of his or her rights under the Constitution of the United States or the State of Illinois or both, in the proceedings that resulted in his or her conviction." *People v. Gayden*, 2020 IL 123505, ¶ 39. A defendant commences a postconviction proceeding under the Act by filing a petition for relief in the trial court. 725 ILCS 5/122-1(b) (West 2010).

¶ 23         Only a single petition for postconviction relief may be filed under the Act without leave of court. *Id.* § 5-122-1(f).

> "Leave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure. For purposes of this subsection (f): (1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." *Id.*

Leave of court to file a successive petition should only be granted where a defendant establishes both prongs of the cause-and-prejudice test. *People v. Davis*, 2014 IL 115595, ¶ 14, 6 N.E.3d 709.

¶ 24                    A. Ineffective Assistance of Trial Counsel

¶ 25         Defendant first argues he established cause and prejudice with respect to his ineffective assistance of trial counsel claim and, therefore, should be permitted to file a successive postconviction petition raising that claim. Defendant argues trial counsel provided ineffective assistance by "fail[ing] to impeach the State's star witnesses' identification of [defendant] as the offender." In support of his claim, defendant points to the following statements contained in the

police reports he received in response to his FOIA request. In one report, Townsend is reported to have stated he "didn't notice if the [black male] had [a] bandana over his face when he first ran by [Townsend's] drive[-thru] window" and he "would not be able to identify the suspect." In another report, Adamson is reported to have stated "[s]he did not think she could recognize [Herbst's assailant] again." According to defendant, he established cause for his failure to raise this claim in his first postconviction petition because he was "unaware of the witnesses' prior statements until after he obtained [the] police reports on March 13, 2014." Defendant argues he established prejudice because "the identification testimony was a crucial piece of the State's case."

¶ 26        Contrary to defendant's assertion, he has not established cause for his failure to assert this ineffective assistance of trial counsel claim in his initial postconviction petition. Although defendant claims he was ignorant of the contents of the police reports until March of 2014, the record demonstrates defendant reviewed the police reports before he even went to trial. During the evidentiary hearing on defendant's postconviction petition, defendant's trial counsel testified she both "review[ed] all the disclosure materials, police reports[,] and other evidence" that had been provided to her and "*review[ed] those items with [defendant.]*" (Emphasis added.) Accordingly, defendant was aware of the statements made by Townsend and Adamson long before he filed his initial postconviction petition.

¶ 27        Even assuming, *arguendo*, that defendant was unaware of the statements recorded in the police reports until after he filed his initial postconviction petition, defendant failed to explain why he delayed so long to acquire the records. Defendant was informed in January of 2012 that to obtain his police reports, he would have to request them from the Champaign Police Department, yet defendant inexplicably waited *over two years* before he issued a FOIA request for his records from that agency. That defendant did not obtain the police reports until after he filed

his initial postconviction petition is attributable solely to his own inaction and, therefore, does not qualify as an objective factor that impeded him from raising his claim earlier. See *People v. Ortiz*, 235 Ill. 2d 319, 329, 919 N.E.2d 941, 947 (2009) (stating an objective factor is "external" to the defense).

¶ 28　　　　Even if defendant could establish cause, he cannot establish he was prejudiced by trial counsel's failure to impeach Adamson and Townsend in light of the overwhelming evidence against him. At trial, the State established defendant had access to a handgun that matched the description of the weapon used by the assailant, was in possession of currency organized and bundled in the same way as the money taken from Herbst and in the amount estimated to have been taken from Herbst (less the amount defendant spent paying his bill), and confessed to robbing Herbst. Considering the totality of the evidence against defendant, even if defense counsel had impeached Adamson and Townsend, we cannot say a reasonable probability exists that defendant would have been acquitted.

¶ 29　　　　Because defendant failed to establish cause and prejudice necessary to excuse his failure to include this claim of ineffective assistance of counsel in his first postconviction petition, the trial court did not err in dismissing his motion to file a successive postconviction petition.

¶ 30　　　　　　　　B. Ineffective Assistance of Appellate Counsel

¶ 31　　　　Defendant next argues he established cause and prejudice sufficient to file a successive postconviction petition asserting that he received ineffective assistance of appellate counsel. This is a different claim from the one defendant raised in his motion for leave to file a successive postconviction petition. In his motion, defendant argued *postconviction counsel* was unreasonable for failing to argue in his amended postconviction petition that appellate counsel should have raised an excessive sentence claim in defendant's first appeal. Because defendant's

motion did not include a claim of ineffective assistance of appellate counsel, he has forfeited review of this issue. See *People v. Jones*, 211 Ill. 2d 140, 148, 809 N.E.2d 1233, 1239 (2004) (matters not raised in postconviction petition may not be argued on appeal). Even if defendant had included his allegation against postconviction counsel in this appeal, his claim would still be barred because defendant already raised that issue in his appeal from the trial court's denial of his amended postconviction petition. See *People v. Blair*, 215 Ill. 2d 427, 443, 831 N.E.2d 604, 615 (2005) ("The doctrine of *res judicata* bars consideration of issues that were previously raised and decided on direct appeal."). As noted above, in that case, we found postconviction counsel was not required to include the excessive sentence claim against appellate counsel in the amended petition because defendant did not include the claim in his original petition. *People v. Hemingway*, No. 4-17-0011 (2017) (unpublished summary order under Illinois Supreme Court Rule 23(c)). Accordingly, we decline to review defendant's second contention of error.

¶ 32                                         III. CONCLUSION

¶ 33              For the reasons stated, we affirm the trial court's judgment.

¶ 34              Affirmed.