NOTICE
This Order was filed under
Supreme Court Rule 23 and
is not precedent except in the
limited circumstances
allowed under Rule 23(e)(1).

2021 IL App (4th) 200237-U

NO. 4-20-0237

IN THE APPELLATE COURT

FILED
December 28, 2021
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Respondent-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| DONTRELL L. THOMPSON, | ) | No. 11CF672 |
| Petitioner-Appellant. | ) | |
| | ) | Honorable |
| | ) | Heidi N. Ladd, |
| | ) | Judge Presiding. |

JUSTICE HOLDER WHITE delivered the judgment of the court.
Presiding Justice Knecht and Justice Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, concluding the trial court properly denied
petitioner's motion for leave to file a successive postconviction petition where he
failed to (1) raise a colorable claim of actual innocence and (2) show cause and
prejudice for his failure to raise his sentencing claim in his initial postconviction
petition.

¶ 2    Petitioner, Dontrell L. Thompson, appeals from the Champaign County circuit

court's judgment denying him leave to file a successive petition for relief under the

Post-Conviction Hearing Act (Postconviction Act) (725 ILCS 5/122-1 to 122-7 (West 2018)). On

appeal, petitioner argues the trial court erroneously denied his motion for leave to file a

successive petition because he demonstrated a colorable claim he is actually innocent based on

newly discovered evidence. Petitioner additionally argues he demonstrated cause and prejudice

for his failure to challenge his sentence as unconstitutionally excessive based on his youth and intellectual disabilities. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        On May 2, 2011, the State charged petitioner by information with (1) one count of attempted first degree murder, a Class X felony (720 ILCS 5/8-4, 9-1(a)(1) (West 2010)) (count I), in that, while armed with a handgun and with the intent to kill Tony Brock, he personally discharged that handgun, proximately causing great bodily harm to Brock and (2) one count of aggravated battery with a firearm, a Class X felony (*id.* § 12- 4.2(a)(1)) (count II), in that he knowingly and by means of the discharge of a firearm caused injury to Brock in that he shot Brock with a handgun.

¶ 5                                    A. Jury Trial

¶ 6        Petitioner's case proceeded to a jury trial over four days in February and March 2012. This court previously discussed the evidence presented at petitioner's trial as follows:

> "Tyeeste Slaughter testified, on May 1, 2011, she was driving toward the Market Place Mall when a purple Chrysler Pacifica nearly hit her vehicle. Concerned about such erratic driving, Slaughter called the police. While on the phone with police, Slaughter followed the Pacifica to obtain the license plate information. The Pacifica parked in the mall parking lot, at which time Slaughter observed three men get out of the vehicle. One of the men—wearing a black-hooded sweatshirt—concealed a handgun on his person. Panicked that the Pacifica's occupants intended to confront her over following them, Slaughter drove away.

Based on Slaughter's call to police, mall security and the Champaign Police Department were on alert for both the Pacifica and the man in possession of the handgun. When mall security officer Roman Gordon received the report, he headed from his position in the food court toward the parking lot. Gordon saw three black males—later identified as Frank Day, [petitioner], and Brock—exiting the mall. Day was ahead of the other two males and walking quickly away. [Petitioner], who was wearing a black hooded sweatshirt, grabbed Brock, who was wearing a white shirt. Gordon observed [petitioner] and Brock scuffle, and then Brock attempted to run away. According to Gordon, [petitioner] pulled a handgun from his pocket and fired at Brock. Once Brock was on the ground, Gordon observed [petitioner] (1) hit Brock with the handgun and (2) stand over Brock and fire his gun.

Scott Carter, another mall security officer, was in the parking lot when he heard a gunshot. When he turned toward the sound, he observed [petitioner] fire his gun at Brock while Brock was attempting to flee.

Similarly, Robert King, a mall security officer, observed [petitioner] fire his weapon at Brock twice. After a scuffle during which [petitioner] hit Brock with the gun, King observed [petitioner] fire at Brock from close range.

Numerous officers from the Champaign police department were also on the scene when gunshots were fired, as they were investigating the Pacifica parked in the mall parking lot. Officers John McAllister, Shane Standifer, and Thomas Petrelli heard gunshots, and ran toward the commotion. Lieutenant David Shaffer was off duty and visiting the mall with his family when he heard the

shots. Officers McAllister, Standifer, and Shaffer observed [petitioner] standing over Brock, raising a gun toward Brock's head. Officer Petrelli testified he saw [petitioner] fire at Brock prior to Brock falling to the ground. As [petitioner] raised his gun to fire again at Brock, Officers McAllister and Standifer fired their weapons, hitting [petitioner], who fell to the ground and dropped the gun. The gun was recovered, and no other weapons were found at the scene.

Frank Day testified [petitioner] and Marquis Thompson were his cousins. According to Day, Marquis asked Day and [petitioner] to help him find Brock, with whom Marquis had been in an altercation the night before. The three men drove around in the Pacifica until they found Brock, at which time they followed him to the mall. The men went into the mall and later observed Brock walking toward the parking lot from the food court. According to Day, Brock attempted to hit him, so Day ran. Day then heard shots fired behind him. Day admitted he did not initially tell police the same story upon his arrest. Moreover, he was offered probation in a pending felony case if he testified against [petitioner]." *People v. Thompson*, 2018 IL App (4th) 150597-U, ¶¶ 7-12.

Petitioner did not testify, and at the conclusion of trial, the jury found him guilty of both attempted first degree murder and aggravated battery with a firearm. The trial court sentenced petitioner to 55 years in prison, and this court affirmed his sentence on direct appeal. *People v. Thompson*, 2013 IL App (4th) 120508-U, ¶ 1.

¶ 7                                B. Postconviction Proceedings

¶ 8            In May 2014, petitioner *pro se* filed a postconviction petition arguing he was denied his constitutional rights to a fair trial and effective assistance of trial counsel. In

- 4 -

September 2014, petitioner *pro se* filed a second postconviction petition alleging he was also actually innocent. After advancing the petition to second-stage proceedings and appointing counsel for petitioner, who filed an amended petition, the trial court granted the State's motion to dismiss. On appeal, this court allowed the Office of the State Appellate Defender's (OSAD) motion to withdraw as counsel for petitioner and affirmed the trial court's judgment. *Thompson*, 2018 IL App (4th) 150597-U, ¶ 1.

¶ 9        In October 2019, petitioner *pro se* filed a motion for leave to file a successive postconviction petition. Petitioner later filed a motion requesting time to amend his prior motion, which the trial court allowed. In his amended motion, petitioner argued the trial court should allow him leave to file a successive postconviction petition because (1) he was actually innocent based on newly discovered evidence and (2) new case law, which was not available to him at the time he filed his initial postconviction petition, supported vacating his *de facto* life sentence based on the trial court's failure to adequately consider his youth and intellectual disabilities at sentencing.

¶ 10        In support of his motion, petitioner attached to his proposed petition a notarized, unsworn statement from Frank Day. In Day's unverified statement, dated February 22, 2016, Day claims he lied at trial and only testified against petitioner because he was "under duress" and "intimidation" from the prosecutor, who allegedly threatened Day with 30 years in prison if he did not testify. Day claimed petitioner was not the shooter and did not have a gun when Day saw him standing over Brock's body. Petitioner additionally attached the following: (1) a document from Milwaukee Public Schools stating petitioner's dosage for Prozac, an antidepressant medication; (2) records from the Milwaukee County Behavioral Health Division containing petitioner's oppositional defiance disorder diagnosis; and (3) a 2017 Menard Correctional Center

- 5 -

mental health treatment plan listing petitioner's schizophrenia, post-traumatic stress disorder, depression, and anxiety diagnoses.

¶ 11　　　　On May 5, 2020, the trial court entered a written order denying the motion, concluding that "[e]ven if Day testified now to the matters set forth in his 2016 statement, [petitioner] has failed to demonstrate that it would be likely to have changed the outcome on retrial," especially "[i]n light of the overwhelming evidence of [his] guilt." The court further found petitioner failed to establish cause and prejudice with respect to his sentencing claim because the records he attached "d[id] not constitute newly discovered evidence," and "[n]one of the information contained in any of those documents constitutes evidence which would have changed the court's sentencing determination at the time, or if presented at a new sentencing hearing, would affect the sentence now."

¶ 12　　　　This appeal followed.

¶ 13　　　　　　　　　　　II. ANALYSIS

¶ 14　　　　On appeal, petitioner argues the trial court erroneously denied his motion for leave to file a successive petition because he: (1)  presented a colorable claim he is actually innocent and (2) demonstrated cause and prejudice for his failure to challenge his sentence as unconstitutional. The State responds that petitioner failed to (1) raise a colorable claim he is actually innocent because he did not present any newly discovered evidence that would probably change the outcome of his trial and (2) demonstrate cause and prejudice. We affirm.

¶ 15　　　　　　　　A. Postconviction Proceedings Generally

¶ 16　　　　The Postconviction Act provides a means for a criminal defendant to assert that, in the proceedings resulting in his conviction, there was a substantial denial of his constitutional rights. *People v. Evans*, 2013 IL 113471, 989 N.E.2d 1096. The Postconviction Act contemplates

the filing of only one postconviction petition. *People v. Pitsonbarger*, 205 Ill. 2d 444, 456, 793 N.E.2d 609, 619 (2002). Leave of court must be obtained prior to pursuing a successive petition under the Postconviction Act. 725 ILCS 5/122-1(f) (West 2018).

¶ 17 To obtain leave to file a successive postconviction petition, the petitioner must either (1) show cause and prejudice for the failure to raise a claim in his or her earlier petition, or (2) set forth a colorable claim of actual innocence. *People v. Edwards*, 2012 IL 111711, ¶¶ 22-24, 969 N.E.2d 829; see also 725 ILCS 5/122-1(f) (West 2012) (setting forth the cause-and-prejudice test). "A request to file a successive petition based on actual innocence is reviewed under a higher standard than that applicable to the first stage for an initial petition, which only requires that the petition is not frivolous or patently without merit." *People v. Robinson*, 2020 IL 123849, ¶ 43. At this stage, all well-pleaded allegations in the proposed petition and its supporting documentation are taken as true if not positively rebutted by the record. *Id.* ¶ 45. Accordingly, the trial court is precluded from making factual or credibility determinations to determine the legal sufficiency of the petition. *Id.*

¶ 18 We review *de novo* the trial court's denial of a petitioner's motion for leave to file a successive petition for postconviction relief. *People v. Green*, 2012 IL App (4th) 101034, ¶ 30, 970 N.E.2d 101.

¶ 19                                    B. Actual Innocence

¶ 20 On appeal, petitioner first argues the trial court erroneously dismissed his motion to file a successive petition because he raised a colorable claim of actual innocence based on the "newly discovered" statement from Frank Day. We disagree.

¶ 21                                    1. *Applicable Law*

¶ 22    Our supreme court recently set forth the law regarding claims of actual innocence as follows:

> "To establish a claim of actual innocence, the supporting evidence must be (1) newly discovered, (2) material and not cumulative, and (3) of such conclusive character that it would probably change the result on retrial. [Citations.] Newly discovered evidence is evidence that was discovered after trial and that the petitioner could not have discovered earlier through the exercise of due diligence. [Citation.] Evidence is material if it is relevant and probative of the petitioner's innocence. [Citation.] Noncumulative evidence adds to the information that the fact finder heard at trial. [Citations.] Lastly, the conclusive character element refers to evidence that, when considered along with the trial evidence, would probably lead to a different result. [Citations.] The conclusive character of the new evidence is the most important element of an actual innocence claim. [Citation.]
>
> Ultimately, the question is whether the evidence supporting the postconviction petition places the trial evidence in a different light and undermines the court's confidence in the judgment of guilt. [Citation.] The new evidence need not be entirely dispositive to be likely to alter the result on retrial. [Citations.] Probability, rather than certainty, is the key in considering whether the fact finder would reach a different result after considering the prior evidence along with the new evidence. [Citation.]" *Robinson*, 2020 IL 123849, ¶¶ 47-48.

¶ 23    Petitioner argues this case is akin to *Robinson*. In that case, the defendant was convicted of first degree murder along with two codefendants. *Id.* ¶¶ 15-17. At trial, the State

presented evidence from two witnesses who, while stopped at an intersection facing a viaduct, observed two people "standing over a person who was sitting on the ground against a car when a third person exited the vehicle and shot the person on the ground." *Id.* ¶ 8. The State also presented a lengthy signed confession from the defendant, as well as testimony from others to whom defendant had allegedly confessed, including a man named Leonard Tucker. *Id.* ¶¶ 9-10, 13. No eyewitnesses identified the defendant as the shooter, and the State did not present any physical or forensic evidence linking the defendant to the crime. *Id.* ¶ 16. After his conviction was affirmed on direct appeal, the defendant filed an initial postconviction petition, which was dismissed at the second stage of proceedings. *Id.* ¶ 19-20.

¶ 24 The defendant later filed a motion for leave to file a successive postconviction petition, arguing he was actually innocent. *Id.* ¶ 21. The defendant claimed he was not involved in the murder but rather took the fall for fellow gang member Tucker. *Id.* ¶ 22. In support of his petition, the defendant attached affidavits from multiple witnesses who observed Tucker in the vicinity of the murder on the night in question, including one who averred he personally observed Tucker exit a car on the viaduct with two other men while holding an "A.K." and another who averred Tucker confessed to the killing. *Id.* ¶¶ 25, 28. The circuit court denied the motion, and the appellate court affirmed. *Id.* ¶¶ 30, 31.

¶ 25 The supreme court reversed and remanded for second-stage postconviction proceedings, concluding the defendant's supporting documentation was sufficient to state an arguable claim of actual innocence. *Id.* ¶ 83. The supreme court noted the appellate court erroneously concluded "the evidence in the supporting affidavits was positively rebutted simply because it was contradicted by the evidence presented at trial." *Id.* ¶ 60. The court clarified that "the well-pleaded allegations in the petition and supporting documents will be accepted as true

unless it is affirmatively demonstrated by the record that a trier of fact could never accept their veracity." *Id.* In concluding the defendant presented an arguable claim of innocence, the court relied on the facts "no physical or forensic evidence linked [him] to the crimes" and no eyewitnesses identified him "as being involved or even present at the time of the relevant events." *Id.* ¶ 82. Rather, the only evidence supporting the defendant's guilt was his own confession and testimony that he had confessed to others. *Id.*

¶ 26                                  2. *This Case*

¶ 27        Here, petitioner has failed to raise a colorable claim of actual innocence because—even assuming Day's unsworn statement was newly discovered, material, and noncumulative—it was not of such a conclusive character that it would probably change the result on retrial. Unlike *Robinson*, the record here shows no trier of fact considering the allegations in the petition and Day's statement—namely, that an unknown Black male, rather than petitioner, shot Brock, along with the trial evidence, could ever accept the truth of Day's statement. First, petitioner and Day were both apprehended by Champaign police officers immediately following the shooting. The record showed only three Black males were present at the scene: Day, Brock, and petitioner. No fourth person—*i.e.*, the unknown Black male Day claims shot Brock—was ever observed either at the scene or leaving the scene. Any claim a fourth, unidentified person was responsible for the shooting is positively rebutted by the record. Additionally, it is undisputed a gun was recovered next to petitioner following the shooting. Further distinguishing this case from *Robinson*, the State presented multiple eyewitnesses who personally observed petitioner shoot Brock, as well as physical evidence, *i.e.*, the gun. Day's recantation testimony, "when considered along with the trial evidence," does not "place[ ] the trial evidence in a different light." *Id.* ¶¶ 47-48. Given the volume of eyewitness and physical

evidence favoring petitioner's guilt, Day's statement does nothing to undermine confidence in the judgment of guilt. Thus, it is not probable that no reasonable juror would have convicted petitioner in the light of Day's statement recanting his prior trial testimony.

¶ 28                                 C. Excessive Sentence

¶ 29         Petitioner additionally argues the trial court erroneously denied his motion for leave to file a successive postconviction petition because he demonstrated cause and prejudice for his failure to raise his excessive sentence claim in his initial petition. Specifically, petitioner—who was 22 at the time of the offense in this case—argues his sentence was unconstitutional under the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. 1, § 11) because his intellectual disability rendered him the functional equivalent of a juvenile.

¶ 30                                 1. *Forfeiture*

¶ 31         The State first argues this court should not address petitioner's claim because it was not raised in his motion or in the attached proposed petition and is therefore forfeited. See *People v. Jones*, 213 Ill. 2d 498, 505, 821 N.E.2d 1093, 1097 (2004) ("[T]his court has generally held that a claim not raised in a petition cannot be argued for the first time on appeal."). Specifically, the State argues petitioner never alleged his age or effective age (due to intellectual disability) precluded a *de facto* life sentence, but rather only alleged his mental condition in and of itself precluded a *de facto* life sentence.

¶ 32         We conclude that petitioner sufficiently raised the issue of the constitutionality of his sentence based on both his age and intellectual disability. In his proposed petition, petitioner compared the facts of his case to (1) *People v. Coty*, 2018 IL App (1st) 162383, ¶ 68, 110 N.E.3d 1105, *overruled by People v. Coty*, 2020 IL 123972, which held adult criminal defendants with

- 11 -

intellectual disabilities must be treated similarly to minors for purposes of sentencing, and

(2) *People v. Reyes*, 2016 IL 119271, 63 N.E.3d 884, which held that a juvenile criminal

defendant's consecutive mandatory minimum sentences were unconstitutional under *Miller v.*

*Alabama*, 567 U.S. 460 (2011) (holding a sentencing scheme that mandates life in prison without

the possibility of parole for juvenile defendants violates the eighth amendment to the United

States Constitution). Petitioner's reliance on these cases shows his intention to challenge his

sentence based on both his youth and his intellectual disability, and therefore we address

petitioner's argument for purposes of determining whether he demonstrated cause and prejudice

for his failure to raise the claim in his initial petition.

¶ 33                                    2. *Cause and Prejudice*

¶ 34           As stated *supra*, with regard to claims not involving actual innocence, leave to file

a successive postconviction petition will be granted when the petitioner demonstrates both cause

for his failure to raise the issue in a prior postconviction petition and prejudice resulting from

that failure. *People v. Davis*, 2014 IL 115595, ¶ 14, 6 N.E.3d 709; 725 ILCS 5/122-1(f) (West

2012). "Cause" is established when the petitioner shows some objective factor impeded his

ability to raise the claim in the original postconviction proceedings. *People v. Tenner*, 206 Ill. 2d

381, 393, 794 N.E.2d 238, 246 (2002). "Prejudice" is established when the petitioner shows the

claimed error so infected his trial that the resulting conviction violated due process. *Id.*

¶ 35           Petitioner argues he demonstrated cause for failing to raise his proportionate

penalties cause claim in his initial postconviction petition because he "could not have raised

claims based on [*Reyes* and *Coty*] at the time of his first postconviction petition." We disagree.

¶ 36           While this matter was pending before this court, the Illinois Supreme Court

released its opinion in *People v. Dorsey*, 2021 IL 123010. In that case, the defendant appealed

from the First District's judgment affirming the denial of the defendant's motion for leave to file a successive postconviction petition. *Id.* ¶ 1. As relevant to this case, the defendant argued that his aggregate sentence of 76 years in prison for crimes committed when he was 14 years old violated the proportionate penalties clause of the Illinois Constitution as applied to him. *Id.* ¶¶ 4, 19, 68. The supreme court held that the defendant failed to demonstrate cause for his failure to raise this argument in his initial postconviction petition as required by section 122-1(f) of the Postconviction Act (725 ILCS 5/122-1(f) (West 2016)). In reaching this conclusion, the supreme court held that not only was the defendant's claim both (1) forfeited and (2) barred by the doctrine of *res judicata*, but also, "*Miller*'s announcement of a new substantive rule under the eighth amendment does not provide cause for a defendant to raise a claim under the proportionate penalties clause." *Id.* ¶¶ 70, 74. The court reasoned as follows:

> "As defendant acknowledges, Illinois courts have long recognized the differences between persons of mature age and those who are minors for purposes of sentencing. Thus, *Miller*'s unavailability prior to 2012 at best deprived defendant of 'some helpful support' for his state constitutional law claim, which is insufficient to establish 'cause.' " *Id.* ¶ 74 (quoting *People v. LaPointe*, 2018 IL App (2d) 160903, ¶ 59, 127 N.E.3d 131).

¶ 37 We conclude petitioner has failed to demonstrate cause for his failure to raise his proportionate penalties clause claim under our supreme court's decision in *Dorsey*. Under *Dorsey*, the unavailability of *Miller* and subsequent Illinois case law interpreting *Miller*—such as *Reyes* and *Coty*, upon which petitioner relies—does not constitute cause for a petitioner's failure to raise a proportionate penalties clause claim in his initial postconviction proceeding. Moreover, all of the information and documents petitioner claims support his claim were available to

petitioner at the time of sentencing. In fact, much of the information regarding his diagnoses and mental health conditions was provided in detail in the presentence investigation report, which the trial court considered at sentencing. Petitioner has not identified any objective factor that impeded him from raising his claim in a prior proceeding. Because petitioner cannot demonstrate cause, we need not address the issue of prejudice. Accordingly, the trial court properly denied petitioner's motion for leave to file a successive petition, and we affirm the judgment.

¶ 38                                    III. CONCLUSION

¶ 39            For the reasons stated, consistent with Illinois Supreme Court Rule 23(b) (eff. Jan. 1, 2021), we affirm the trial court's judgment.

¶ 40            Affirmed.